STATE ex rel. SIMARD *v.* FOURTH JUDICIAL DISTRICT COURT.

[Argued August 21, 1893. Decided September 5, 1893.]

CONTEMPT—*Certiorari.*—Proceedings to punish for contempt in violating an injunction are reviewable by this court on *certiorari.* (*In re McCutcheon,* 10 Mont. 115; *In re Shannon,* 11 Mont. 67; *In re MacKnight,* 11 Mont. 126; 28 Am. St. Rep. 451, cited.)

SAME—*Violation of injunction.*—One who has been enjoined from cutting hay upon certain land and who, after the service of the injunction, advises and procures others to proceed with the cutting and removal of the hay is punishable for contempt.

Original proceeding. Application for writ of *certiorari* to review action of district court in punishing relator for contempt. Writ denied.

Statement of the case by the justice delivering the opinion:
This is an application for a writ of *certiorari* to review the action of the fourth judicial district court in fining relator for

an alleged contempt of court. Relator was attached for contempt, and a hearing was had, at which evidence was introduced. In the return to the writ of *certiorari* from this court, the papers, proceedings, and evidence which were before the district court, and upon which relator was adjudged to be guilty of contempt, are certified to this court, and from them the following statement of facts may be made:

J. O. Hanratty and A. R. Tillman commenced an action in the fourth judicial district court against Eugene Simard to obtain a judgment against him, restraining him from cutting hay on certain land, alleged in the complaint to belong to Hanratty and Tillman. A writ of injunction was issued July 28, 1893, from the district court, and served on Simard the same day. On July 31st Hanratty made affidavit before the court that the injunction had been violated by the aid of the servants and employees of Simard, in that they had gone upon the land, and removed all the hay. An attachment for contempt was issued against said Simard and Asselin. The hearing was set for August 3, 1893. On the hearing the pleadings in the case of *Hanratty* v. *Simard* were before the court, and also testimony was taken of witnesses. The testimony of Simard, Asselin, La Casse, and Hanratty, which the court below had before it on the hearing being reduced to a short narrative, is as follows: The land was claimed by Hanratty and Tillman through purchase from the Northern Pacific Railroad Company, made May 31, 1893. This was known to Simard and to Asselin and La Casse. Six years previous Simard had sown grass seed upon the land, and had fenced it and cut the hay. Other than these acts, he made no claim of any rights to the hay or the land. In June Simard made a contract with Hanratty and Tillman that he would cut the grass for them for five dollars a ton. Afterwards, and on July 10, 1893, he sold the grass as his own, as he says, to Asselin and La Casse. After that, on July 24th, he told Hanratty that he had concluded to cut the grass for himself. Asselin and La Casse employed Simard to cut the grass, which he was doing on July 28, 1893, at which time the injunction was served upon him. Asselin was never on the land but once since the 10th of July, until he began to cut the hay,

as hereinafter described.    A few moments after the injunction order was served upon Simard, he told Hanratty that the grass belonged to him, Simard, and that he was going to have it, and that he, Hanratty, could not hurt him for taking it.    He then went at once to Frenchtown, and told Asselin of the service of the injunction, and he and Asselin went to Missoula to consult lawyers regarding the moving of the hay.    On their way to Missoula nothing was said by either of them regarding the hay or the moving of it.    Returning from Missoula, Simard told Asselin that he thought from what their lawyers said, he, Asselin, had better go ahead and cut said hay.    Simard himself took no part in the moving of the hay, but the same was all taken from the ground by Asselin on the 30th of July. Hanratty had a talk with Simard regarding his purchase of the land from the railroad company, and Simard never in any way made any objection to Hanratty's ownership of the land prior to about the 24th of July, when he claimed the grass growing thereon as his own.

Upon the facts appearing as above recited, the district court discharged Asselin from the charge of contempt, and held Simard guilty, and fined him one hundred dollars and costs. Simard contends that this action of the district court was without jurisdiction, and should be annulled by this court upon *certiorari*.

*Bickford, Stiff & Hershey*, for Relator.

*Marshall, Francis & Corbett*, for Respondent.

DE WITT, J.—The respondent contends that this contempt proceeding is not reviewable in this court on *certiorari*, but that contention seems to be disposed of by the following cases: *In re McCutcheon*, 10 Mont. 115; *In re Shannon*, 11 Mont. 67; *In re MacKnight*, 11 Mont. 126; 28 Am. St. Rep. 451. We proceed to the merits of the application.

The statement of case above recites what the testimony before the court tended to prove, and, indeed, is conceded by the relator to be correct, except in one particular, which is not of great importance.    We therefore review the situation, as recited, as that which was before the district court.    Simard

personally and physically desisted from interference with the hay after service upon him of the writ of injunction, but did he not obtain to be done that which he did not personally do? The district court proceeded upon the ground that he did. The injunction was against Simard, his agents, servants, and employees, and all others acting in aid or assistance of him. It appears that the relation of Simard to Asselin and La Casse was very close. Simard knew that Hanratty and Tillman claimed title to the ground by purchase from the railroad company. He recognized that claim when he contracted to cut the hay for them. After agreeing to cut the hay for them he purported to sell the grass to Asselin and La Casse, and agreed to cut it for them. Then afterwards, at the service of the writ, he said that it was his own, and he was going to have it. If his position was only that of a servant of Asselin and La Casse, he contradicted his claim to that relation when, at the time of the service of the writ, he claimed the hay himself. If he were only a servant, he had no interest in the hay or its disposition after he had informed his alleged master of the service of the writ. But we find him going to Missoula with Asselin to consult lawyers, whom he describes as "our lawyers." He says to Asselin: "From what our lawyers say, you had better go ahead and cut the hay." So we find Simard recognizing the Hanratty and Tillman title on one day, and agreeing to cut the hay for them. Very soon afterwards he is selling the hay to Asselin and La Casse, and agreeing to cut it for them. Next we find him claiming the hay himself. Then, in company with Asselin, he is consulting "their lawyers," and he suggests to Asselin that he, Asselin, had better go ahead and cut the hay.

We are of opinion that the district court exercised a sound discretion if it concluded that Simard, under the showing made, had a very lively personal interest in the hay. All the circumstances together indicate this. Although the claim is made that Simard was only the servant of Asselin and La Casse, yet we believe that the district court was justified in its conclusion that Simard disobeyed the injunction by advising or procuring Asselin and La Casse to do the prohibited act. It is said by the New York court of appeals "that injunction

orders must be fairly and honestly obeyed, and not defeated by subterfuges and tricks on the part of those bound to obey them; that they might be violated by aiding, countenancing, abetting others in violation thereof, as well as doing it directly; and that courts would not look with indulgence upon schemes, however skillfully devised, designed to thwart its orders." (*People* v. *Pendleton*, 64 N. Y. 622.)

We are therefore of opinion that the writ of *certiorari* should be denied, and it is so ordered.

HARWOOD, J., concurs.

PEMBERTON, C. J., did not sit in the hearing of this case.