## IN RE SHANNON.

[Argued July 15, 1891. Decided July 20, 1891.]

Contempt— *Jurisdiction of inferior court.* — A police court being of inferior juris-
diction is confined in the exercise thereof to the limits prescribed by statute,
and where power is conferred by statute upon that court to punish for con-
tempt, the exercise of the power is also restricted to the specific acts defined by
law to constitute the offense.

Same. — The expression of sentiment through the public press regarding the prac-
tice of a police court, and of abuses flowing from the past administration of such
court, where the article was directed against the system then prevailing and
could not be held to refer to any particular case adjudicated by the magistrate
incumbent at the time of the publication, is not punishable by such magistrate
as "disorderly, contemptuous, or insolent behavior toward the judge while
holding court, tending to interrupt the due course of a trial or other judicial
proceeding," nor as "any other unlawful interference with the process or pro-
ceeding of a court," under section 584 of the Code of Civil Procedure defining
contempts.

Original proceeding. Application for a writ of habeas corpus.

*Alex. C. Botkin,* and *D. E. Waldron,* for Petitioner.

I. The police court of Butte had no jurisdiction to enter
judgment fining the petitioner, or ordering his commitment
in default of payment. There is no inherent power in inferior
courts to punish contempts not committed in the immediate
view or presence of the court or judge, and such authority as
they may exercise in those cases is conferred and regulated by
statute. The affidavit on which the attachment was founded
does not state facts constituting a contempt. (*a*) It does not
show that the conduct complained of was "towards the judge
while holding court, tending to interrupt the due course of
a trial or other judicial proceeding." (*State* v. *Galloway,* 5
Cold. 326; 98 Am. Dec. 404; *Rutherford* v. *Holmes,* 66 N. Y.
368; *Watson* v. *Nelson,* 69 N. Y. 536; *Stuart* v. *People,* 3 Scam.
405; *Haight* v. *Lucia,* 36 Wis. 355; *Brooker* v. *Commonw.* 12
Serg. & R. 175; *In re Kerrigan,* 33 N. J. L. 344; *Brass Crosby's
Case,* 2 Black. W. 754.) (*b*) It does not show that the pub-
lication which constituted the alleged contempt had reference
to any case then pending in that court, or in any court.
(*State* v. *Anderson,* 40 Iowa, 207; *Dunham* v. *State,* 6 Iowa,
245; *Cheadle* v. *State,* 110 Ind. 301; 59 Am. Rep. 199;
*Suroc's Case,* 48 N. H. 432; *Story* v. *People,* 79 Ill. 45; 22

Am. Rep. 178; *State* v. *Kaiser*, 20 Or. 50; *Batchelder* v. *Moore*, 42 Cal. 412; *In re Dalton*, 46 Kan. 253; *Clarke's Case*, 12 Cush. 320.)

II. It is a constitutional privilege to criticise the acts of public officers, whether legislative, executive, or judicial. The proceedings and decisions of courts may be discussed and commented upon adversely, so long as such comments are characterized by a proper spirit. (*Cooper* v. *People*, 13 Colo. 337; *Ex parte Barry*, 85 Cal. 603; 20 Am. St. Rep. 240; *Story* v. *People, supra.*)

III. The communication constituting the alleged contempt was not a reflection upon the court, but a discussion of a certain policy of legislation.

Harwood, J. — It appears that the petitioner was proceeded against in the court of the police magistrate of the city of Butte, upon a charge of having committed contempt of said court, in that the petitioner, on the 28th of June, 1891, caused to be printed and published in the Daily Miner, a newspaper printed and published in said city, a certain article in terms as follows: —

"Card from J. W. Shannon. Butte, June 26. To the editor of the Miner: In this morning's Miner an article on the local page recites, animadverts, and moralizes upon a case in the District Court which was appealed from a lower court, and in the determination of which the local government was put to cost of more than two hundred dollars, to save the defendant from paying the paltry fine of five dollars, when, according to a jury of his peers, he had done no wrong. I grant you that this is a representative case, and illustrates a flagrant and frequent abuse, with the emphasis on 'frequent.' But it is to the remedy proposed that this deponent would demur. 'Fix a limit to appeal cases.' Never. The right of appeal should be neither limited nor abridged. The right of vindication is cheap, at any cost. Why not correct the necessity of such appeals? Why not modify our ordinances so that the court and prosecuting attorney shall not be interested in their own convictions? Pay them fixed salaries, and free them from the imputation of running 'a cost shop,' and waxing fat at the expense of victims who get into their toils. They would not then find it necessary

to reject the *res gestæ*, which would fix the blame where it belongs.  There would then be no inducement to make a double case and a double set of costs, yielding double fees in every case of breach of the peace.  Now, it will not be denied by any well-read attorney that in all well-regulated police courts the practice in such cases is that where an investigation shows both parties to be guilty, and equally guilty, the court then and there, having both parties present, fines the defendant on the complaint, and summarily fines the complaining witness. Such practice, however, would not subserve the mercenary purposes of a prosecutor, who regards a public office, not as 'a public trust,' but as 'a private snap.'  It is time that in the city of Butte the Statute of Limitations should run on a certain kind of high-handed practice.          J. W. SHANNON."

This publication was alleged in the proceedings to be " a contemptuous and insolent article, concerning the proceedings of said court, and the practice therein."

Upon the hearing, the petitioner raised the question of the jurisdiction of the court to proceed against him as for contempt upon the matter set forth, and insisted that the facts set forth did not constitute a contempt of court, and therefore that the court had no jurisdiction to entertain the proceeding.  The police magistrate, however, found the petitioner "guilty as charged, and ordered and adjudged that he pay a fine of fifty dollars, and costs of this prosecution, amounting to the sum of ten dollars, and stand committed to the county jail until such judgment is satisfied."

The proceedings of said court in the matter under consideration, and files and records concerning the same, duly authenticated by certificate and seal, are made a part of this application, to show wherein the imprisonment is "alleged to be illegal," and "in what the alleged illegality consists."  (Comp. Stats. div. 5, § 1165.)  And upon the showing it is insisted here by counsel for petitioner that the imprisonment is illegal, because the judgment and commitment proceeded upon a charge which in law does not constitute a contempt of said court, and hence the court was without jurisdiction to assess such punishment.

The act of incorporation of the city of Butte grants to the

police magistrate "exclusive jurisdiction to try and determine all actions arising under the ordinances of the city, and, in addition, the same jurisdiction conferred by law upon justices of the peace." (Comp. Stats. div. 5, § 371.)  The statute of this State, defining the jurisdiction of a justice of the peace, provides that "a justice may punish any person guilty of a contempt of his court, as defined by this act, by fine or imprisonment, or both; but the fine shall not exceed one hundred dollars, nor imprisonment shall not exceed one day.  The acts for which the person is convicted shall be particularly specified in the justice's docket, and the judgment entered thereon." (Comp. Stats. div. 1, §§ 816, 817, Code Civ. Proc.)

Section 584 of the Code of Civil Procedure defines certain "acts or omissions in respect to a court of justice, or proceedings therein," which constitute "contempts of the authority of the court."

There is some controversy in the reports and authorities as to whether a statute defining what shall constitute contempt operates to take away common-law jurisdiction of courts of record in such proceedings, and leaves the court with only statutory jurisdiction and power to punish only where the act or omission comes within the express provisions of statute, or whether such statutes are only declaratory of the common law in part, or supplemental to it, and leave the court free to exercise common-law jurisdiction upon this subject, in cases not provided for by statute, where such case was formerly cognizable at common law. (*Clark* v. *People*, 12 Breese, 340; 12 Am. Dec. 177, and note; *State* v. *Galloway*, 5 Cold. 326; 98 Am. Dec. 404, and note, and cases cited.)  That question was touched upon by the learned judge in delivering the opinion of the court in *Territory* v. *Murray*, 7 Mont. 251, although that case was declared to be within express provisions of our statutes. But such questions do not concern this inquiry.  The Justice's Court is not one of general or common-law jurisdiction.  Its jurisdiction is restricted to the limits prescribed by statute. In cases of contempt, the statute provides that such courts "may punish any person guilty of a contempt, as defined by this act."  Therefore the power of a justice of the peace to punish for contempt is confined to the acts or omissions prescribed

in section 584 of the Code. The jurisdiction of the police magistrate in question to punish in cases of contempt rests upon the same provisions, by reason of the statute investing him with the jurisdiction of justice of the peace. If, then, the police magistrate has power to visit punishment upon the petitioner for contempt of his court, for the publication of said article, it must be found that such act is one defined in section 584, Code of Civil Procedure. By consulting that section, it is readily seen that no such act is within its terms. The first and ninth subdivisions of said section contain the only provisions under which it could be contended that this proceeding is authorized. These provisions are as follows: "*First*, disorderly, contemptuous, or insolent behavior toward the judge while holding court, tending to interrupt the due course of a trial or other judicial proceeding;" "*ninth*, any other unlawful interference with the process or proceedings of a court."

The power of inferior courts to punish persons for contempt, in cases where the act for which the punishment is adjudged did not occur in the presence of the court, is questioned by some authorities, and denied altogether by others. Mr. Bishop, in his work on Criminal Law, states the result of his investigation of the subject as follows: "Contempts against justices of the peace—distinguished from Superior Courts of record. What has been said thus far refers particularly to contempts against higher courts of record. But there is an opinion, which may, perhaps, be well founded, that the authority of justices of the peace is somewhat more limited. They may commit for contempts in their presence while holding their court; but Mr. Gabbett observes that 'courts of inferior jurisdiction cannot attach or commit a party for any contempt which does not arise in the face of the court.' And there are many expressions in the English books apparently sustaining this general proposition. Thus, though the present County Courts are of record, and by the statute are permitted to commit only for contempts in court, still, being of inferior jurisdiction, it is strongly intimated that the same result would proceed from common-law principles. It is also held in England that the sessions cannot proceed in this way against a man for disobeying an order of filiation, but only on his recognizance; and we have some

American *dicta* limiting the power of justices of the peace to contempts in court. In reason, this power does not extend as far as that of high tribunals, still there may be circumstances in which it should be permitted some scope beyond this narrowest limit." (2 Bishop on Criminal Law [7th ed.], § 263, and cases cited.)

Undoubtedly, the statute of Montana extends the power of justices of the peace beyond the narrowest limits referred to by the learned author. But that power cannot be extended beyond the statute. Its exercise must be confined to acts mentioned in the statute, occurring in the presence of the court, or so near as to "interrupt the due course of a trial or other judicial proceeding; or, when exercised in reference to acts done out of court, the act must be one expressly defined by statute; such, for example, as unlawful interference with the legal execution of processes. None of these would include power to punish for the expression of sentiments through the medium of the public press or otherwise regarding the practice of the court, or of results or abuses alleged to flow from the past administration of such court. A power to punish for such utterance, or to silence the voice of comment upon such matters, would be the discovery of an unknown quantity in jurisprudence, and the exercise of it would be a menace to a free and spirited people.

The constitutional right of freedom of speech, written in the tenth section, article iii. of our Constitution, would be set at naught by the exercise of such a power, whenever that freedom of speech happened to be directed to the action of public courts. There is no such exception. We speak now of the discussion of matters pertaining to courts, or the practice therein, which have no tendency to affect the merits or result of particular cases pending, which class of discussion is entirely distinguished from publications which are designed and put forth for the purpose and have a tendency to influence the result of particular cases.

So far as the article in question refers to any particular case, it refers to one determined in the District Court.

Viewing the contents of this publication alone, free from any knowledge of local events, which might possibly direct the course of imagination, we are struck with surprise that the honorable police magistrate entertained an affidavit which declares that

the publication was a "contemptuous and insolent article concerning the proceedings and practice" in his honorable court. The article says the case in point was "appealed from a lower court." We have judicial knowledge, and no doubt every well-informed person in this jurisdiction who reads the newspapers has knowledge otherwise, that the police court is not the only court there lower in rank than the District Court. But it is said that the reference in said article to "ordinances," and "to the city of Butte," might fairly be taken as referring the remarks to the police court. Granting all such inferences, still it may be asked, what is there in the article to indicate that the case in point was adjudicated in, or appealed from said court, as administered by the present incumbent, or that the abuses mentioned occur under his administration? The article is directed against a system, and avers that abuses have prevailed under such system, and proposes a change to remove temptations which invite abuse. But it does not follow that there may not be as pure an administration of justice in said police court under the present police magistrate as ever will, or could be, under any other system, although the present system may not be the best, or even tends to invite abuse. We are therefore surprised that the magistrate so readily adopted the conclusion that the article referred to the "practice and proceedings" in his court. Nevertheless, if the article had expressly referred to past proceedings and practice of said court under the present magistrate, this proceeding and summary punishment would not apply. If the article was libelous, there are other remedies, and it may be observed, moreover, that summary punishment for contempt in such a case is no vindication of past practice and proceedings of courts; no more than lashes vindicate the cause relied on to justify the chastisement.

It is ordered that the writ of habeas corpus issue, and if the imprisonment is found to be based upon the proceedings set forth in the application, the prisoner will be summarily discharged.

Blake, C. J., and De Witt, J., concur.