STATE EX REL. GRICE, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 2,618.)

(Submitted October 14, 1908. Decided November 13, 1908.)

[97 Pac. 1032.]

*Contempt—Charges—Sufficiency—District Courts—Jurisdiction —Certiorari.*

Contempt—District Courts—Jurisdiction—Charges—Sufficiency.
  1. To give the district court jurisdiction of a contempt proceeding, it is essential that there be a direct charge made, either positively or upon information and belief, that the defendant committed an

act constituting a contempt of court; otherwise the proceeding must be dismissed.

Same—Jurisdiction—*Certiorari.*

2. The review by the supreme court, on writ of *certiorari*, of the action of the district court in issuing an order to show cause why the relator should not be punished as for a contempt, is confined to the inquiry whether the lower court had jurisdiction to proceed.

District Courts—Remarks of Judge—When not Part of Record.

3. Where, after a district judge had denied a motion pending before him, he made certain remarks reflecting upon the course pursued by one of the parties, the remarks so made, *held* not to be part of the records in the case.

District Courts—Disqualification—Jurisdiction.

4. *Held,* that where a disqualifying affidavit was filed after a motion to strike portions of a pleading had been submitted and taken under advisement, the jurisdiction of the court over the cause ceased after ruling on the motion. (Rev. Codes, sec. 6315.)

District Courts—What does not Constitute Contempt.

5. After denying a motion to strike out parts of an answer, a district judge indulged in some remarks reflecting upon the good faith of the party interposing it, who was an attorney. These remarks found their way into print, and in reply thereto the attorney caused to be published, an article in a newspaper in which, after stating that the court's ruling on the motion to strike was correct, he launched into a vicious attack upon the personal character of the judge. Prior to his decision of the motion to strike the judge had been disqualified from further acting in the cause. *Held,* on *certiorari,* that since the personal attack on the judge did not refer to any judicial action or pending litigation, but had to do solely with matters outside the record, the court had no jurisdiction to order relator to answer a charge of contempt of court.

CERTIORARI by the state, on the relation of John R. Grice, against the district court of the second judicial district and George M. Bourquin, a judge thereof, to review an order to show cause why relator should not be punished for contempt of court. Proceedings in district court ordered dismissed for want of jurisdiction.

*Mr. John J. McHatton, Mr. James T. Fitzgerald, Mr. James Baldwin, Mr. Peter Breen, Mr. Jesse B. Roote,* and *Messrs. Wight & Pew,* for Relator.

The power of courts to punish for contempt should only be exercised in the administration of justice, not to gratify any desire they may have to inflict punishment or to accomplish revenge. (*State ex rel. Boston & Montana Co.* v. *Judges, etc.,* 30 Mont. 206, 76 Pac. 206; *In re Pierce,* 44 Wis. 411; 9 Cyc.

52; *In re MacKnight,* 11 Mont. 137, 27 Pac. 336, 29 Am. St. Rep. 451; *In re Shannon,* 11 Mont. 67, 27 Pac. 352.) A publication reflecting upon a county judge, respecting the discharge of his ministerial duties, forms no basis for contempt proceedings, though the judge would suffer injustice and injury, officially and privately, and though the publication be false and malicious. (*Hamma* v. *People* (Colo.), 94 Pac. 326.) When a case is finished, courts are subject to the same criticism as other persons. (*Patterson* v. *Colorado,* 205 U. S. 454, 27 Sup. Ct. 556.) "A court or judge has no power to compel the public or any individual thereof, attorney or otherwise, to consider his rulings correct, his conduct proper, or even his integrity free from stain, or to punish for contempt any mere criticism or an animadversion thereon, no matter how severe or unjust." (*In re Dalton,* 46 Kan. 253, 26 Pac. 673; *In re Pryor,* 18 Kan. 72, 26 Am. Rep. 747; *Ex parte Green,* 46 Tex. Cr. App. 576, 108 Am. St. Rep. 1035, 81 S. W. 723, 66 L. R. A. 727; *Dunham* v. *State,* 6 Iowa, 245; *State* v. *Anderson,* 40 Iowa, 207; *Story* v. *People,* 79 Ill. 45, 22 Am. Rep. 158; *State* v. *Kaiser,* 20 Or. 50, 8 L. R. A. 584, 23 Pac. 964; *State* v. *Sweetland,* 3 S. Dak. 503, 54 N. W. 415; *Cooper* v. *People,* 13 Colo. 337, 22 Pac. 790, 6 L. R. A. 430; *Fishback* v. *State,* 131 Ind. 304, 30 N. E. 1088; *Myers* v. *State,* 46 Ohio St. 473, 15 Am. St. Rep. 638, 22 N. E. 43; *In re Robinson,* 117 N. C. 533, 53 Am. St. Rep. 596, 23 S. E. 453; *Stewart* v. *People,* 3 Scam. (Ill.) 405; *State* v. *Tugwell,* 19 Wash. 238, 52 Pac. 1056, 43 L. R. A. 717.)

The primary purpose of the power to punish for contempt is to safeguard the interests of the parties to judicial proceedings, and in so doing to protect the court from coercion or interference while in the discharge of its judicial duties. (*Hamma* v. *People, supra.*) The article published in this case does not refer to a pending cause and is not calculated to prejudice or prevent fair and impartial action therein. (*In re Shortridge,* 99 Cal. 526, 37 Am. St. Rep. 78, 34 Pac. 227, 21 L. R. A. 755; *In re Shannon, supra.*) Reflections upon a judge or attacks upon his private character as a citizen do not con-

stitute contempt. (*State* v. *Root,* 5 N. Dak. 487, 57 Am. St. Rep.
568, 67 N. W. 590; *Hamma* v. *People, supra; Storey* v. *People,*
79 Ill. 45, 22 Am. Rep. 158; *State* v. *Circuit Court,* 97 Wis. 1,
65 Am. St. Rep. 90, 72 N. W. 193, 38 L. R. A. 555; *In re Mac-
Knight, supra.*) To hold otherwise would be to deprive the
citizens of this state of rights guaranteed to them by the con-
stitution. (Const., Art. III, secs. 10, 16, 28, 29; *Storey* v. *People,
supra; Rosewater* v. *State,* 47 Neb. 630, 66 N. W. 640; *Ex parte
Greene, supra; Neel* v. *State,* 9 Ark. 259, 50 Am. Dec. 209.)

*Mr. James E. Murray,* for Respondents.

It is an inherent right of courts, independent of statute, in
the absence of a limitation placed upon them by the power
creating them, to punish an act which tends to impede, em-
barrass or obstruct a court in the discharge of its duties. (*In
re Shortridge,* 99 Cal. 526, 37 Am. St. Rep. 78, 34 Pac. 227,
21 L. R. A. 755; *Lamberson* v. *Superior Court,* 151 Cal. 458, 91
Pac. 100, 11 L. R. A., n. s., 619; *Telegram etc. Co.* v. *Common-
wealth,* 172 Mass. 294, 70 Am. St. Rep. 280, 52 N. E. 445,
44 L. R. A. 159; *Myers* v. *State,* 46 Ohio St. 473, 15 Am. St. Rep.
638, 22 N. E. 43; *In re Darby,* 3 Wheel. Cr. Rep. 1.)

Section 10, Article III, of the Constitution does not give the
right to attempt by defamatory publications to disgrace or in-
sult the court, destroy public confidence in it or impede or em-
barrass it in the discharge of its duties. The proceeding here
is based upon the theory that the published letter contains a
grossly inaccurate report of the proceedings in the case, and
independently of whether or not the case is pending in court,
it is punishable as a contempt. Such has been held by the
supreme court of this state in the case of *State* v. *Faulds,* 17
Mont. 140, 42 Pac. 285; see, also, *Burdett* v. *Commonwealth,* 103
Va. 838, 106 Am. St. Rep. 916, 48 S. E. 878, 68 L. R. A. 251;
*In re Chadwick,* 109 Mich. 588, 67 N. W. 1071. A libelous
attack upon a court and judge constitutes a contempt, whether
it refers to a particular pending case or only to the court as an
instrumentality of government. (*State* v. *Sheppard,* 177 Mo.

205, 76 S. W. 79, 99 Am. St. Rep. 624.)   The contempt in this case is both criminal and civil.   It is criminal because it scandalizes the court itself, and therefore is a matter of public concern; and it is civil because it seeks to prejudice the public against one side of the case.

It is contended by relator that he may be punished as for a libel, or a criminal prosecution may be instituted against him for the wrong committed.   Such a remedy would be hardly better than the wrong, since then the judge must become a private prosecutor in some other court, and depend upon it to vindicate the independence of his own.   (*Lamberson* v. *Superior Court,* 151 Cal. 458, 91 Pac. 100, 11 L. R. A., n. s., 619; *Myers* v. *State,* 46 Ohio St. 473, 15 Am. St. Rep. 638, 22 N. E. 43; *In re Darby, supra.*)   It is true that if the language used is susceptible of a double construction, and the contemner disavows any intention to commit contempt, his explanation should be accepted and the proceeding dismissed; but the rule does not apply where the language is clearly offensive and insulting.   (*McCormick* v. *Sheridan* (Cal.), 20 Pac. 24.)

A statutory provision that certain contempts are misdemeanors and may be punished as such does not deprive the court of its common-law power to punish for contempt.   (*Hughes* v. *Arizona Territory* (Ariz.), 85 Pac. 1058, 6 L. R. A., n. s., 573; *People ex rel. Attorney General* v. *News-Times Pub. Co.,* 35 Colo. 253, 84 Pac. 912.)

An attack upon the court and judge as was made in this case would naturally tend to influence the judge called in to try the case in which the disqualifying affidavit was filed.   In order to protect himself from a like attack, he might be influenced to shirk his duty.   The case was still pending in the district court.   It was a pending case within the law of contempt, and punishable as such.   (*People* v. *News-Times Pub. Co., State* v. *Faulds, In re Chadwick, supre.*)

The contention of the relator that the offense is punishable by private action is absurd.   Such a contention totally ignores consideration of the question as affecting the public morals and

public interests.  (*State* v. *Judge*, 45 La. Ann. 1250, 40 Am.
St. Rep. 295, 14 South. 310.)

MR. JUSTICE SMITH delivered the opinion of the court.

On September 17, 1908, the above-named relator, who is an
attorney at law and justice of the peace, residing at Butte,
filed in this court a petition wherein he alleged that James
E. Murray, the county attorney of Silver Bow county, had
theretofore filed in the district court of said county, before
George M. Bourquin, one of the judges thereof, an affidavit, in
which the said Murray charged the relator with being guilty of
a contempt of court, by reason of having published a certain
letter in a newspaper called the ''Butte Miner,'' and that said
judge had issued an order requiring the relator to show cause
why he should not be punished for contempt.  The petition then
alleges that said court and judge are ''without jurisdiction to
proceed against your petitioner; that said affidavit does not
state facts sufficient to constitute a contempt.''  On the strength
of this petition a writ was issued out of this court directing
the respondents to send to this court a transcript of the record
and proceedings in said contempt matter for review.  In com-
pliance with that order, the respondents have certified up the
record of the proceedings in the court below.  That record shows
that the county attorney filed an affidavit in the district court
wherein he alleged that on September 12, 1908, the relator had
caused to be published in the ''Butte Miner'' newspaper a let-
ter or statement, of which the following is a part:
''To the 'Butte Miner':

''On Saturday, September 5, 1908, a motion to strike from the
answer of respondents in the proceeding entitled cause No.
A-1564, State of Montana ex rel. Thomas Dunbar, plaintiff,
versus John R. Grice, Justice of the Peace, and Charles Rowe,
Constable, was filed, argued and submitted to George M. Bour-
quin, judge of Department Two of the district court of the
second judicial district of the State of Montana, in and for the

county of Silver Bow. The said judge took the same under advisement, and on Saturday, September 12, 1908, overruled the same. On Wednesday, September 9, 1908, the said judge was disqualified by an affidavit of said constable from proceeding to exercise further jurisdiction in the premises, because of the fact that an intimated opinion (his own) had been given before the merits of the proceeding had been presented to him for consideration. Notwithstanding the facts, which are of record, the said Judge Bourquin handed down a decision in which he properly overruled the motion to strike, but after having been put in the clear because of his prejudged merits of the proceeding, George's opinion found its way into print. * * * The only matter that the court was asked to pass upon was as to whether or not the motion to strike should or would not be sustained. Judge Bourquin was disqualified for two reasons from acting in the matter. First, he openly and publicly from the bench disqualified himself, as a matter of fact and law, from passing upon the merits of the proceeding, before it had been submitted to him. Second, one of the respondents, said constable, disqualified him by his affidavit; so the second blow. almost killed father, yet he insisted upon acting as court, judge, jury and lawyer.''

Then followed a vicious attack upon the private character of Judge Bourquin, couched in most unseemly and intemperate language. From the phraseology employed, however, it is manifest that the attack was not inspired by the ruling of the court on the motion to strike, but by some other matter. We have nothing but words of condemnation for such an attack, and the relator's counsel does not attempt to justify it. But this does not dispose of the question before us.

The question here is whether the district court has jurisdiction to proceed with the inquiry and punish the relator as for a contempt. It is the settled law of this state that there must be some direct charge made, either positively or upon information and belief, that the defendant committed an act constituting a contempt. Otherwise the proceeding must be dismissed. (Bos-

*ton & Mont. Con. C. & S. Min. Co.* v. *Montana Ore Pur. Co.,* 24 Mont. 117, 60 Pac. 807.) "The review must be confined to the inquiry whether the tribunal, board or officer has acted without jurisdiction. Such is the rule of the common law, the declaration of the statute, and the doctrine of this court." (*State ex rel. King* v. *District Court,* 24 Mont. 494, 62 Pac. 820.)

It appears from the papers in the case that, after the district judge had denied the motion to strike, he made some remarks, of which the following are a part: "So far as the justice is concerned, the answer shows a *prima facie* defense. So the matter cannot be stricken, but left for the trial to develop whether true or an unscrupulous device to defeat the exemption laws and to avoid paying this relator his exempt wages. * * * And it is such derelict officers in base alliance with some unscrupulous lawyer that (making some particular justice court a den of iniquity wherein the veriest poor are unconsciously oppressed and robbery, not justice done) with the indiscriminating stigmatize all justice courts as 'justice for plaintiff' rather than 'of the peace,' and bring them into disrepute." These remarks were afterward printed in a newspaper in the city of Butte. The remarks of the judge were no part of the records in the case. (*Phillips* v. *Coburn,* 28 Mont. 45, 72 Pac. 291; *Menard* v. *Montana Central Ry. Co.,* 22 Mont. 340, 56 Pac. 592; *Harrington* v. *Butte & Boston Min. Co.,* 27 Mont. 1, 69 Pac. 102.)

Very able and exhaustive arguments were made at the hearing, and both sides have filed excellent briefs, wherein the modern law of contempt is discussed and many cases are cited. But we do not think it necessary to follow counsel through this maze of decisions.

It appears that a motion to strike certain parts of the answer in the *Dunbar Case* was submitted to Judge Bourquin and by him taken under advisement. Pending his decision a disqualifying affidavit was filed against him. Thereafter he overruled the motion to strike. This ended his jurisdiction over the case for the time being at least (section 6315, Revised Codes);

and that portion of Mr. Grice's letter which we have quoted relates entirely to this judicial action. The reference in said letter to a lack of jurisdiction on the part of the district judge evidently means jurisdiction to do more than pass upon the motion submitted. It is true that the language is not elegant, nor appropriate from the lips of an attorney, but nevertheless there is nothing therein contained reflecting upon the action of either the court or judge. On the contrary, it is expressly stated therein that the ruling of the court was correct. Had the relator stopped there, there could be no question that he was not in contempt. It appears, however, that he discontinued his comments upon the decision of the court and launched into a personal attack upon the judge for some remarks made by him after the final determination of the motion. The writer was no longer commenting upon a decision of the court, but replying to remarks of the judge outside of the record. We are of opinion that the article shows on its face that the offensive language of the relator did not refer to any judicial action or pending litigation, but solely to some other matter. The nature of such other matter is disclosed by the remarks of the judge quoted above. These remarks afterward found their way into print, and the relator, evidently incensed thereby, attempted to reply thereto through the medium of the "Butte Miner." The whole affair, therefore, resolved itself into a personal controversy between Judge Bourquin and Mr. Grice.

For the reason that the district court was without jurisdiction to proceed, upon the record as disclosed to this court, it is directed that the order to show cause, heretofore issued by the district court be vacated, and the proceeding dismissed.

MR. JUSTICE HOLLOWAY concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.