STATE EX REL. CHEADLE, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 6,977.)

(Submitted March 14, 1932. Decided April 22, 1932.)

[10 Pac. (2d) 586.]

*Mr. E. K. Cheadle, Jr.,* for Relator.

Opinion: PER CURIAM.

In this proceeding E. K. Cheadle, a member of the bar of this state, and some time district judge, as relator, obtained

a writ of certiorari directed to the district court of the tenth judicial district and to Honorable Edgar J. Baker, one of its judges, to annul the action of the court in finding relator guilty of contempt and imposing upon him a fine of $25. The writ having been issued, respondents in return thereto filed a statement in which it appears, as it did in relator's petition, that on the eighteenth day of February, 1932, during the trial of a cause entitled *L. P. Cragin, Plaintiff,* v. *Samuel Phillips, Defendant,* the court made the following minute entry: "In re contempt: Be it remembered that during the trial of the cause this day of *L. P. Cragin, plaintiff,* v. *Samuel Phillips, defendant,* and at the conclusion of the testimony and after the court had instructed the jury and at the time of final closing argument on the part of plaintiff, certain statements were made by E. K. Cheadle, Sr., which were duly excepted to by the defendant through his attorney, Roy E. Ayers, Esq.; and the matter having been submitted to the court and the court having ruled thereon sustaining the objection, the said E. K. Cheadle, Sr., persisted in his argument upon the point in question to which counsel again objected; that the court having again sustained the challenge, the said E. K. Cheadle, Sr., did then and there still persist in his argument upon the very point to which objection had been made and sustained by the court, and the court did rap thereupon for order, whereupon the said E. K. Cheadle, Sr., did then and there in open court and in the presence of the jury, turn to the court and in an insolent, contemptuous and insulting manner and in extreme anger utter the words, 'Surely the court knows the merest elementary rules of law'; and further, 'This court can not intimidate me.' Wherefore it is adjudged that such conduct coupled with the words so uttered is a direct contempt of this court, and it is ordered that the said E. K. Cheadle, Sr., be and he is hereby adjudged in contempt of this court and as punishment therefor it is the judgment of this court that he pay a fine in the sum of Twenty-five Dollars and that execution shall issue therefor."

The proceeding being in certiorari, the question for determination is whether the trial court exceeded its jurisdiction in rendering the judgment. (Sec. 9837, Rev. Codes 1921; *State ex rel. Examining & Trial Board* v. *Jackson*, 58 Mont. 90, 190 Pac. 295; *State ex rel. Pereira* v. *District Court*, 83 Mont. 349, 272 Pac. 242.) Certiorari cannot be used to correct errors committed within jurisdiction. (*State ex rel. Griffiths* v. *Mayor of City of Butte*, 57 Mont. 368, 188 Pac. 367; *State ex rel. Deck* v. *District Court*, 64 Mont. 110, 207 Pac. 1004; *State ex rel. Baker* v. *Second Judicial District Court*, 24 Mont. 238, 61 Pac. 309.)

1. Relator relies upon the following decisions of this court: *State ex rel. Breen* v. *District Court*, 34 Mont. 107, 85 Pac. 870, 871; *In re Mettler*, 50 Mont. 299, 146 Pac. 747; *State ex rel. Rankin* v. *District Court*, 58 Mont. 276, 191 Pac. 772, 774; and argues (1) that the recitals of the alleged judgment were not sufficient to give the court jurisdiction to punish for contempt. It is alleged (2) that no opportunity was given relator to explain the language imputed to him or that actually used by him, or to show that no contempt was intended thereby.

In the *Breen Case* the court annulled the judgment for the reason that the alleged contemptuous acts were stated by conclusions only. The same is true of the judgments in the *Mettler* and *Rankin Cases*. In the *Breen Case* the court observed: "In a given case, where the contempt consists in the manner or bearing of the contemnor, it may be difficult for the court to set forth the facts in any other form than by shorthand rendering thereof, so to speak; but it is, nevertheless, necessary, that the attendant circumstances be set forth, so that the propriety of the conclusion reached may be determined."

The judgment in this case shows that a jury trial was in progress and that the relator was making the closing argument; that certain statements (the nature of which is not disclosed) were made by the relator which were objected to by opposing counsel, and sustained; that the relator persisted in his argument upon the point in question (not disclosed), to which an objection by opposing counsel was again sustained,

and that relator again persisted in his argument upon the very point (not stated); that the court rapped for order, whereupon relator, the court says, did then and there in open court, and in the presence of the jury, turn to the court, and in an insolent, contemptuous, and insulting manner, and in extreme anger, uttered the words, first, "Surely the court knows the merest elementary rules of law," and further, "This court can not intimidate me."

The conditions here presented are different from those in the *Breen, Mettler* and *Rankin Cases*. Upon the facts shown, can the judgment be sustained?

Insolence to the judge by insulting words or conduct, or any ▮▮ comments in open court upon his decision, or interruption of his judgment, constitute contempts. (Oswald, Contempt of Court, p. 51.) What did relator intend when he said, "Surely the court knows the merest elementary rules of law?" Does the language mean other than, "Admitting that you are not much of a lawyer, you surely must know the merest elementary rules of law?" The words "merest elementary" are significant. This expression was followed by, "This court can not intimidate me." All were uttered, says the court, "in an insolent, contemptuous and insulting manner and in extreme anger." It is true that the recitation "in an insolent, contemptuous and insulting manner," standing alone, would not be sufficient to show that relator had committed an act of contempt. But the recitation that he acted "in extreme anger" is a shorthand statement of fact. It does not appear that any motion was made to correct the minute in any particular. The minute as certified to us imports absolute verity. (*State* v. *Turlock*, 76 Mont. 549, 248 Pac. 169.) We must assume that relator's manner was what the court says it was, the language employed and the surrounding circumstances considered. (*Russell* v. *French*, 67 Iowa, 102, 24 N. W. 741.)

We see no way to escape the conclusion that the words, "Surely the court knows the merest elementary rules of law," were contemptuous.

It is conceivable that under exceptional circumstances the defiance, "This court can not intimidate me," might be: (1) in the courageous defense of a client's rights and justified upon the facts; or (2) it might be motivated by insubordination. (3) In still another view it carries the imputation that the judge is guilty of the reprehensible fault of attempting to intimidate counsel, thus abusing his authority. Taken in connection with what took place, as the record tells the story, we cannot suppose the language was justified.

In *State ex rel. Rankin* v. *District Court*, supra, this court said: "Every court, in the very nature of things, must possess the power to protect its dignity by compelling counsel and litigants, as well as all other persons who are called into its presence or who are there merely as spectators, to observe decorous and respectful conduct, to the end that the proceedings in hand may be conducted in an orderly way."

In *State ex rel. Hurley* v. *District Court*, 76 Mont. 222, 246 Pac. 250, 254, we quoted from *Territory* v. *Murray*, 7 Mont. 251, 15 Pac. 145, that the "right to punish for contempt is inherent in all courts of justice. It is a part of their very life, and a necessary incident to the exercise of judicial power" —citing *State ex rel. Metcalf* v. *District Court*, 52 Mont. 46, Ann. Cas. 1918A, 985, L. R. A. 1916F, 132, 155 Pac. 278. And we said: "The court, as an instrumentality of the sovereignty which has established and maintains the law, has, and of necessity must have, full power and authority, within the limitations prescribed by law, to control the trial and all persons taking part therein. If it were not so, it would be impossible for the court to keep a trial or proceeding within due bounds, disorder rather than decorum would be the rule, and all attempts to expedite the disposition of business would be foredoomed to failure. * * * Lawyers representing clients in court are officers of the court, charged with responsibilities but little less in character than those which rest upon the shoulders of the judge himself. In their endeavor to maintain the rights of their clients, they are entitled to exercise the widest latitude consistent with the rules of practice, the limitations of

decorum, and the court's necessary control of the trial or proceeding. Being under the obligation to support with dignity the high tenets of a noble profession, they are not called upon to truckle to the capricious whims of impatient judges. Nevertheless, they are not permitted to defy the authority of the court, lawfully exercised, by exhibitions or mere willfulness or obstinacy.''

We may add that a judge ought to be patient and to tolerate that which appears but a momentary outbreak of disappointment on part of counsel. (*In re Pryor,* 18 Kan. 72, 26 Am. Rep. 747.) Counsel on his part should maintain a respectful attitude even if he thinks the court is wrong. Wrongful rulings of the court or remarks to counsel do not justify misconduct of counsel amounting to contempt of court. (*Dodge* v. *State,* 140 Ind. 284, 39 N. E. 745.)

2. The second point against the judgment is based upon the following language found in *State ex rel. Rankin* v. *District Court,* supra, wherein this court said: ''In their brief, counsel for the relator make the point that he was not accorded an opportunity to explain or excuse his contempt and thus purge himself or to show that no contempt was intended. This seems to be the better practice even in flagrant cases. (4 Ency. Pl. & Pr. 789.) No one should be condemned without a hearing.'' It is to be noted that the court went no further than to commend the practice indicated in the encyclopoedia, but the authorities cited in the encyclopoedia, do not sustain the text. *Russell* v. *French,* 67 Iowa, 102, 24 N. W. 741, is based upon a statute peculiar to that state. *Crow* v. *State,* 24 Tex. 12, was not one of direct contempt. There the sheriff was prima facie in contempt for failure to make a return, and the court said he was entitled to make a showing as to his dereliction. In *United States* v. *Scholfield,* 1 Cranch C. C. 130, Fed. Cas. No. 16,230, a witness was cited for failure to obey a subpoena. In *State* v. *Gibson,* 33 W. Va. 97, 10 S. E. 58, the alleged contempt was out of the presence of the judge. That the text is not sound is easily demonstrated. The court, during

the trial of a case, may find it imperative to inflict summary punishment in order to enforce its lawful orders. The contempt may be of such a character that no explanation is warranted. When it appears from the conduct and language used in open court that the lawyer is unquestionably guilty of contempt, disclaimer of any intention of disrespect is no excuse. (*Dodge* v. *State,* supra.)

Except in unusual cases, we think it is the part of wisdom to ask for an explanation and to afford the contemnor an opportunity to then and there purge himself or to show that no contempt was intended.

When a contempt is committed in the actual presence of the court during the trial of a case, it must be held a matter within the sound discretion of the court whether it shall inflict punishment at the time of the commission of the offense or shall afford an explanation before rendering its judgment.

Finding that the court acted within jurisdiction, it follows that the petition for a writ of certiorari must be, and it is hereby, dismissed.

All the Justices concur.