STATE EX REL. MOSER, RELATOR, *v.* DISTRICT COURT, ET AL., RESPONDENTS.

(No. 8532.)

(Submitted June 21, 1944.   Decided September 25, 1944.)

[151 Pac. (2d) 1002.]

306

*Mr. Philip G. Greenan,* for Relator, submitted an original and supplementary brief, and argued the cause orally.

*Mr. D. W. Doyle,* for Respondents, submitted an original and a reply brief, and argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

The relator was found guilty of contempt, fined $200 and given a jail sentence of five days. The matter is before us by certiorari. From time to time over a period of years the relator was a party in several actions in the district court in and for Pondera County. In one his ranch was sold to satisfy a judgment; that was followed by another in which he sought to have the judgment set aside for fraud, and which was before this court on appeal December 29, 1938. *Moser* v. *Fuller,* 107 Mont. 424, 86 Pac. (2d) 1. In another action in the district court he was found guilty of criminal libel, and fined $300. Judge Hattersley called in the Hon. John Hurly, Judge of the Seventeenth Judicial District, who presided in that case. The relator appears to have become obsessed with the idea that he was being persecuted by the court officials of Pondera county and particularly by Judge Hattersley, and sent the Judge several letters through the mails, letters couched in violent and irrational language, such as the following which appears in the record as "Plaintiff's Exhibit No. 10:"

"Valier, Mont.
"Dec. 29, 1942.

"Judge Hattersley

"Dear Sir:

"I am reporting your Courts blunder to the Dept. of Justice of the United States

"putting out a warrant for me for exposing a theif. Nice business for a Justice Court to be protecting thieves.

"Yours Disrespectively,

"C. L. Moser:"

Then followed: "Plaintiff's Exhibit No. 11:

"Valier, Mont.
"Jan. 11, 1943.

"Judge Hattersley

"Please note

"I have been advised to appear before the Juducial Commette of the State Legislatores and ask for your impeachment for misconduct of office.

"I will grant you one week to recall the papers you sent to Cascade Co. and hand them back to the Supreme Court for their decision. Otherwise I will have to protect myself.

"I never will pay a cent filing fee in any court but the Supreme Court, and stand ready to pay these costs at any and all times when every asked to do so.

"C. L. Moser"

Both the clerk of court and the court reporter testified to one or more controversies between the Judge and Moser that took place in the clerk's office or the judge's chambers, at which more or less criticism was indulged in. Judge Hattersley appears to have exercised no little patience in his contacts with the relator, but finally wrote him a letter, a copy of which appears in the record as follows:

"April 27, 1944

"Mr. C. L. Moser

"Valier, Montana.

"Dear Sir:

"As I told you I would do, I talked with Mr. Phil Greenan yesterday, he being your attorney in your mother's case, that of *Daisy Gibbs* v. *C. P. Fuller,* and he informed me that he was then getting out the necessary interrogatories for the deposition to be taken of your mother, at the place of her residence, and

that he would take the matter up with Mr. D. W. Doyle, and see that the case was tried as soon as possible. As I informed you, I have no connection at all with this case, as Judge Dean King of Kalispell, Montana, has been called in and has assumed jurisdiction of the case. It rests entirely with the attorneys on either side to have this case ready for trial. When the case is ready, I will inform Judge King, and have him fix a day for trial agreeable to him and to the respective attorneys.

"As I informed you, I thought it beneath the dignity of this Court, and myself as Judge of the Ninth Judicial District to pay any attention to the letters you wrote me, or to any papers you have filed with the court, and therefore ignored the same. I thought that your experience in the trial for criminal libel in this court a few months ago, when you were found guilty and fined, would show you that you cannot do the things you have done, and which you still persist in doing, but apparently it has not had the effect it should.

"I have been very lenient with you, but my patience is now exhausted. While I did not give any attention to your letters, or answer them, they are still in the files of this office and available for any necessary or proper action. This is to inform you that if you persist in your conduct, this court will file proper proceedings for your punishment for contempt of court, criminal libel, and if necessary, civil action for damage for libel and slander. If you do not know what this means, you may consult with your attorney, and he can advise you as to those matters.

"I have talked over your cases with you, and attempted to explain matters involved, and have gone further in that regard than I usually do, but I will not enter into any further discussion of them with you in the future, as it does not seem to serve any useful purpose.

"I am sending a copy of this letter to your attorney, Mr. Phil Greenan, of Great Falls, Montana, for his information.

"Yours truly,

"R. M. Hattersley"

310

Counsel objected to the admission of Moser's exhibits on the ground that while "contemptuous in character" they related to actions long since closed and were irrelevant, etc. The particular act of the relator made the basis for the contempt proceeding before us was the filing in the office of the clerk of court of the writing which appears in the record as "Plaintiff's Exhibit No. 5" which is in the following words:

"Demands on Mr. Monsen Sheriff Pondera Co.

"March 9, 1944.

"I am demanding a decision in my case of which Judge King defaulted Jan. 7th.

"The 9th Judicial Court has been charged with stealing a receipt for $3,000 which I trusted them with of which could have settled my case with.

"I have exposed this irregularity to the bar association and the Court should be impeached.

"Mr. Pelletier (Court Reporter) has admitted he lost receipt.

"I expect protection of this Sheriff's office as any law abiding tax paying citizen has a right to expect.

"Clarence L. Moser."

Judge Hattersley testified as to the filing of this document as follows: "On the afternoon of that day [March 9, 1944] Mr. Shepherd [clerk of court] was not feeling well and had gone home. I told him I would look after his office for him, and Mr. Moser personally came into the office then, and handed me this paper plaintiffs exhibit number five which was folded in the form it is now, or approximately so. I didn't look at it. He said, he wanted to file it in court. He didn't say any particular case. I told him Mr. Shepherd was absent, and I was looking after his office for him, and that I would stamp it filed as of that time, and Mr. Shepherd would sign it when he returned the next day as being filed. I fixed the rubber stamping file, so that it had the correct date and stamped it; and then he went out. Of course, I read it after he had left, but this document was presented to me personally while acting for the

Clerk, by Mr. Moser." This document, on being filed in the clerk of court's office, was not marked and filed as a document relating to any particular case.

May 6, 1944, the county attorney of Pondera County filed an affidavit in the office of the clerk of court wherein among other things it is averred that the use of the phrase "9th Judicial Court" contained in the paper filed in the clerk of the court's office "by Moser was intended to mean and refer to the Hon. R. M. Hattersley as the Judge of said Court; C. H. Shepherd as the Clerk of said Court; and A. A. Pelletier as the official stenographer or court reporter of said Court;" and that the phrase "the court should be impeached" was intended to refer to the Hon. R. M. Hattersley as judge of said court. It is further alleged that all the things enumerated were done by relator with the intent to unlawfully interfere with the proceedings of a court of justice and to insult Judge Hattersley, etc., and to expose him to contempt.

Thereupon citation was issued, filed and served commanding the relator to appear and show cause on a certain date why he should not be punished for contempt. Counsel for relator interposed both a general and special demurrer to the citation and its supporting affidavit and a motion to dismiss the proceeding. The special demurrer alleges the affidavit to be "un-intelligible" in that it cannot be determined therefrom whether the alleged contemptuous statements concerning Judge Hattersley "refer to any case now pending before" Judge Hattersley's court. The demurrers were overruled and the motion to dismiss denied. After reciting facts in support thereof, judgment was made and entered as mentioned in the beginning. The judgment provided that the relator, on failure to pay the fine imposed, be imprisoned in the county jail in addition to the five days, one day for each two dollars of the fine of $200.

In the contempt proceedings Judge Hattersley presided in his own court, testified in defense of his own acts relating to the contempt, ruled upon the objections made to his own testimony, and likewise to objections made to the admission in

evidence of the exhibits mentioned, rendered judgment in the contempt proceedings, and issued his order directing that the judgment of the court be duly executed.

Counsel for the contemnor begins his argument as submitted by brief with the statement that he desires it understood that he does not condone or excuse the alleged "contemptuous remarks" of the relator, but contends that Judge Hattersley had no jurisdiction to cite and punish the relator for contempt. He alleges "two definite reasons" why this is so: "The first is, Judge Hattersley was disqualified by his own order from further proceedings in the only pending case in which this relator was involved. Secondly, that the undisputed evidence shows that the alleged contemptuous statements referring to Judge Hattersley dated back to a case * * *" which was disposed of in 1938 by a decision of the Supreme Court, *Moser* v. *Fuller*, supra.

The "order" mentioned above as the first reason why Judge Hattersley was without jurisdiction in the proceeding is the following:

"In the District Court of the Ninth Judicial District of the State of Montana, in and for the County of Pondera

"Daisy V. Gibbs, Plaintiff, v. C. P. Fuller and C. R. Monson, Defendants.

"Order

"The undersigned, Judge of the Ninth Judicial District, hereby requests the HONORABLE DEAN KING, Judge of the Eleventh Judicial District, to hold court for the undersigned Judge, to assume jurisdiction and try and determine all orders to show cause, motions and demurrers, and to hear and finally determine the issues in the above entitled action.

"Dated this 10th day of November, 1943.

"R. M. Hattersley
"Judge"

Counsel for relator contends that upon the issuance and filing

of this order and the assumption of jurisdiction by Judge King, Judge Hattersley was deprived of all jurisdiction in the premises and there was no action then pending before Judge Hattersley in which the relator was an interested party and therefore no ground for contempt could be predicated upon the facts alleged in the affidavit given in support of the citation.

In opposition to this view it is contended in effect by counsel for Judge Hattersley that his order did not disqualify him; that there is a material difference between the judge of a district calling in a judge from another district pursuant to the provisions of section 9098, Revised Codes, to try a case for the judge making the call, and disqualification of a judge by a litigant filing an affidavit of disqualification on account of prejudice pursuant to subsection 4 of section 8868, Revised Codes. It is our view that there is no material difference between a voluntary disqualification of a judge and disqualification by the affidavit of prejudice. Subsection 4 of section 9098 provides in part that when the judge invited to try a case, as Judge King was invited by Judge Hattersley, "If such judge shall so appear he shall be vested with, and shall exercise, in said cause, all the authority of the judge of the district in which said action or proceeding may be pending." Judge King appeared and assumed jurisdiction of the action in *Gibbs* v. *Fuller* referred to in Judge Hattersley's order, and Judge King could not be ousted of his jurisdiction by any process known to us, otherwise than by use of the mode set out in section 8868, supra, and obviously if he had jurisdiction such jurisdiction could vest in no other judge so long as it was in Judge King. (*Curry* v. *McCaffery*, 47 Mont. 191, 131 Pac. 673.) Jurisdiction of a cause cannot be in two judges at the same time when the cause is in a court over which a single judge presides. What is jurisdiction? Webster's New International Dictionary defines jurisdiction as "legal power to interpret, and administer the law in the premises." Volume 14 of Am. Jur., page 363, among other definitions, says it is "the right to adjudicate concerning the subject matter in a given case," and again the same author-

ity says it is "the power to render the particular judgment in the particular case."

In *Reynolds v. Stockton*, 140 U. S. 254, 268, 11 S. Ct. 773, 777, 35 L. Ed. 464, it was said that: " 'Jurisdiction' may be defined to be the right to adjudicate concerning the subject-matter in the given case."

In *Ober v. Gallagher*, 93 U. S. 199, 23 L. Ed. 829, it was said: "A court which has acquired rightful jurisdiction of the parties and subject-matter will retain it for all purposes * * *." There are many authorities found in the books to the same effect but we deem these sufficient.

When a trial judge has been disqualified in a particular case ██ by affidavit of prejudice by a litigant, his jurisdiction in the premises is taken away and he can exercise only those powers expressly reserved to him by statute, namely, arrangement of the calendar, regulate the order of business, power to transfer the cause to another court, or call in another judge. (Sec. 8868, Rev. Codes, subd. 4; *Rowan v. Gazette Printing Co.*, 69 Mont. 170, 220 Pac. 1104.) Where, as in the instant matter, a trial judge on his own motion called in another judge, neither constitutional nor statutory provisions enumerate any powers reserved by the judge who issues the call, but by analogy and by necessity we think that there could be no more power left in the judge who makes the call voluntarily in the one case than if he were deprived of jurisdiction by the filing of an affidavit of prejudice. We therefore hold that Judge Hattersley had no jurisdiction over the case of *Gibbs v. Fuller* at the time the alleged contempt occurred nor power to cite relator for contempt, and that the contempt charge was improperly alleged to have arisen in anything connected with the *Gibbs v. Fuller* action. Judge Hattersley had no jurisdiction of that case except in the limited extent above mentioned after he made and entered the order turning over jurisdiction to Judge King. This is so for the additional reason that the theft of the document which counsel contends Moser attributes to Judge Hattersley or some

of the court attendants, was that of a document which it appears clear was an alleged Exhibit in the case of *Moser* v. *Fuller,* supra, which case was decided on appeal in this court, as heretofore stated, in 1938. Such being the situation, the alleged theft related to a case not pending in any court.

Criticism of a court's rulings or decisions is not improper and may not be restricted after a cause has been finally disposed of and has ceased to be pending. (*In re Shannon,* 11 Mont. 67, 27 Pac. 352; *State ex rel. Grice* v. *District Court,* 37 Mont. 590, 97 Pac. 1032.) And contempt can arise only in a case pending in court, id., but such criticism might constitute libel or slander.

A judge, as an individual, has the same right to redress if he █ be libeled or slandered as any other person, but neither libel nor slander made against a judge constitutes contempt unless the attack on the character or the acts of the judge interferes with the administration of justice by the judge attacked, █ and it has been said by this court that to constitute direct contempt the offending acts must have occurred in the presence of the court while the court was engaged in official duty or was in session. (*Ex Parte Burns,* 83 Mont. 200, 207, 271 Pac. 439; *State ex rel. Cheadle* v. *District Court,* 92 Mont. 94, 10 Pac. (2d) 586.)

It is our view that the contemnor's attacks on Judge Hattersley were not attacks made upon the judge relative to any matter in any action pending before him and that such remedy as may be appropriate in the premises should be sought by the judge in his private capacity and not as for contempt. We are further of the opinion that even if proceeding as for contempt had been appropriate another judge should have been called in to preside. Such course, we think, is more nicely in accord with the spirit of the law relating to the disqualification of judges than any other course. Subsection 1 of section 8868, Revised Codes, provides that a judge "must not sit or act as such," in any action or proceeding, "to which he is a party, or in which he is interested." Public confidence in our courts is vital to the administration of justice, and it would be difficult to con-

vince the reasonable mind of the average person that Judge Hattersley was not interested in the proceeding in contempt over which he presided. The attacks upon him by the relator, while arising out of litigation that had been conducted in Judge Hattersley's court, were attacks on the personal integrity of the judge for alleged maladministration of justice, and for theft of an alleged valuable paper claimed to have been entrusted to the custody of the court. Such attacks were not upon the court as a court, but upon the judge individually. No process or proceeding of the court was interfered with or interrupted.

We are impelled to reverse the judgment of the trial court for a further and more vital reason to which we have heretofore adverted. That is the impropriety of Judge Hattersley's presiding and also testifying in a proceeding wherein he had a personal interest.

Under the general rule, in the absence of statute, supported by the weight of authority, the trial judge is not a competent witness qualified to testify for or against either party in an action or proceeding pending in his court and tried before him. (70 C. J., Witnesses, para. 237, p. 180; *Feinstein* v. *Politz,* 103 S. C. 238, 87 S. E. 1005; *People* v. *Dohring,* 59 N. Y. 374, 17 Am. Rep. 349.) But this rule is not applicable in a proceeding for direct contempt, which does not involve the action or conduct of the trial judge personally. (13 C. J., Contempt, para. 83, p. 60; 17 C. J. S., Contempt, sec. 66.) It ought to be applicable, however, where the contempt charged is based upon the personal action or conduct of the trial judge. It is settled law in this state that the statutory provisions for the disqualification of a judge for bias and prejudice, sec. 8868, subd. 4, Rev. Codes, are not applicable in contempt proceedings (*State ex rel. B. & M., etc., Min. Co.* v. *Harney,* 30 Mont. 193, 76 Pac. 10; *State ex rel. Durand* v. *District Court,* 30 Mont. 547, 77 Pac. 318; *Brindjonc* v. *Brindjonc,* 96 Mont. 481, 31 Pac. (2d) 725), but another statute, section 10537 of the Revised Codes, provides that:

''The judge himself, or any juror, may be called as a witness

■■ by either party; but in such case it is in the discretion of the court or judge to order the trial to be postponed or suspended, and to take place before another judge or jury.''

And it is our view that failure of a trial judge to make use of this statutory provision when confronted by a situation such as Judge Hattersley was in the contempt proceeding before us, would constitute an abuse of discretion.

Section 1883 of the Code of Civil Procedure of California is exactly the same as section 10537 of our Codes, and was considered and construed in *People* v. *Connors,* 77 Cal. App. 438, 246 Pac. 1072, where the court, on page 1077, said.

''But it may now be laid down as the generally accepted rule that a judge is not a competent witness in a case being tried before him, and that even where, as in this state, there is a statute which in effect commits the question whether a judge may so testify to the discretion of the court or the judge himself, it will be deemed an abuse of the discretion so vested in the court or judge if the latter's testimony discloses facts without the proof of which the issue such testimony is designed to support cannot be sustained. To illustrate: If the judge was an eyewitness to the commission of an act constituting, as is true of all crimes, one of the basic elements or ingredients of a public offense, or, where a crime was required to be proved wholly by circumstantial evidence, the judge had personal knowledge of a circumstance which constituted an essential link in the concatenation of circumstances absolutely necessary to the establishment of the guilt of the accused, then, in either case, it would be highly improper and, indeed, a flagrant abuse of the discretion vested by law in him or the court for the judge to testify to such fact or facts and at the same time as the judge in the case.''

The question of the competency of the trial judge to be a witness in a contempt proceeding would probably be a pertinent one only in cases of indirect or constructive contempt, and particularly where the Judge himself is made the object of the charge upon which the contempt proceedings are based. In such cases, as was said by Mr. Chief Justice Taft in *Cooke* v. *United*

*States,* 267 U. S. 517, 45 S. Ct. 390, 396, 69 L. Ed. 767, the exercise of the power of contempt is a delicate one, "and care is needed to avoid arbitrary or oppressive conclusions. This rule of caution is more mandatory where the contempt charged has in it the element of personal criticism or attack upon the judge." And, in reversing the judgment of contempt, in that case, because "the procedure pursued was unfair and oppressive to the petitioner," the trial court was directed to "invite" the Senior Judge of the Court of Appeals "to assign another judge to sit in the second hearing of the charge against the petitioner."

While not directly bearing on the question of the competency of the trial judge as a witness and his qualification to testify in a proceeding of this kind, the following additional cases are of interest: *State ex rel. Short* v. *Owens,* 125 Okl. 66, 256 Pac, 704; 52 A. L. R. 1270 and note on page 1291.

In *Ex Parte Owens,* 37 Okl. Cr. 118, 258 Pac. 758, the court, on page 797 of the opinion, said:

"It is contrary to the genius and spirit of free institutions that any man or body of men in any capacity should try his or their own cause and render judgment therein. It is no sufficient answer to say that a contempt proceeding is the concern of the court, to the extent that the honor and dignity of the court shall be respected, and not of the individuals composing that body. Disguised as it may be, the personal element everywhere remains and everywhere predominates in human affairs, and will so long as human nature remains the same." See, also: *Dancy* v. *Owens,* 126 Okl. 37, 258 Pac. 879; *Blodgett* v. *Superior Court,* 210 Cal. 1, 290 Pac. 293, 72 A. L. R. 482; *Briggs* v. *Superior Court,* 211 Cal. 619, 297 Pac. 3; *Bulcke* v. *Superior Court,* 14 Cal. (2d) 510, 94 Pac. (2d) 1006.

The judgment is reversed and remanded with directions to grant the relator's motion to dismiss the proceeding.

ASSOCIATE JUSTICES ANDERSON, ADAIR and ERICKSON concur.

MR. CHIEF JUSTICE JOHNSON takes no part in the above decision.