STATE EX REL. BROPHY, RELATOR, v. DISTRICT COURT ET AL., RESPONDENTS.

(No. 7,275.)

(Submitted April 30, 1934. Decided May 19, 1934.)

[33 Pac. (2d) 266.]

84

*Mr. Timothy F. Nolan,* for Relator, submitted a brief and argued the cause orally.

*Mr. H. E. Gardiner,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

In May, 1932, Chauncey L. Berrien died testate. His wife, Celia Berrien, was sole devisee and legatee under the will. She was appointed and served as executrix until her death in April, 1933. Mary Gavigan was thereafter appointed administratrix of the estate. Celia Berrien left a will in which relator Murry Brophy was named as sole beneficiary and executor. On July 8, 1933, the court on petition of Mary Gavigan, and after due notice thereof by posting as provided by sections 10299, 10300, and 10330, Revised Codes 1921, entered a decree of final settlement of her account and distribution of the estate of Chauncey L. Berrien. Relator declined to accept the residue of the estate from Mary Gavigan, and J. T. Finlen, Jr., was appointed by the court as agent to receive and hold the residue, which he did. Murry Brophy on August 11 filed a motion to set aside that portion of the decree awarding to Mary Gavigan the sum of $1,300 as administratrix fee and $5,000 as counsel fees to Messrs. D. M. Kelly, D. G. Stivers and H. E. Gardiner. The motion was based upon section 10303, Revised Codes 1921, and alleged that these items were decreed inadvertently. The inadvertence is alleged to consist of the

fact that the account and report filed by Mary Gavigan, and upon which the order or decree was made, recites:

"That the amount of the estate accounted for by your petitioner, as such administratrix, is the sum of $39,019.99, and that the compensation of your petitioner, as such administratrix, to be determined in accordance with the laws of the State of Montana, will be the sum of $1,300.40.

"That your petitioner, as such administratrix, has employed H. E. Gardiner of Butte, Montana, as her attorney in administering said estate, and that said executrix employed D. M. Kelly, D. G. Stivers and H. E. Gardiner, all of Butte, Montana, as her attorneys in administering said estate, and that said attorneys have rendered legal services to your petitioner, as such administratrix, in the administration of such estate and to said executrix, as such executrix, in the administration of said estate, and that your petitioner, as such administratrix, has agreed with said attorneys to pay them for said services the sum of $5,000.00, and your petitioner is informed and believes and therefore alleges that said sum is a reasonable sum for attorneys' fees to be paid said attorneys herein."

It is then averred in relator's motion that Mary Gavigan should have called the court's attention to the fact that no compensation was provided for the personal representative by the will of Chauncey L. Berrien, and to the fact that Celia Berrien accounted for the estate in the sum of $22,170.54, and that she should have called the attention of the court to the fact that Celia Berrien as executrix had done and performed all of the duties imposed upon her by law, consisting of giving notice to creditors, causing appraisers to be appointed, selling personal property under court order, filing a partial inventory and appraisement, procuring confirmation of sale of personal property, approving three claims against the estate, giving report to the State Board of Equalization relating to inheritance tax, and the filing of additional and complete inventory. It is alleged that for such service Celia Berrien was awarded no compensation, when in equity there should have been an ap-

portionment of the fee between the present administratrix and relator, as executor of the will of Celia Berrien.

It is also alleged that Celia Berrien, as executrix of the will of Chauncey L. Berrien, performed all the duties of her office until her death, and that all legal proceedings were carried on by her with the aid and assistance of Messrs. D. M. Kelly, D. G. Stivers and H. E. Gardiner in the absence of an agreement to pay a fee to any of them.

The court at first declined to hear the motion on the merits and on motion of Mary Gavigan dismissed it. This court, on relator's application, ordered the motion reinstated for hearing on its merits. (*State ex rel. Brophy* v. *District Court*, 95 Mont. 479, 27 Pac. (2d) 509.) The motion was accordingly heard on its merits. The court found "that the items attacked by said motion were not decreed payable to said persons by reason of any inadvertence alleged in said motion," and denied the motion. Relator has brought the matter to this court on petition for a writ of supervisory control. An alternative writ issued, resulting in a hearing before this court. The question presented for our consideration is whether the court erred in denying the motion.

The evidence introduced at the hearing on the motion shows that Kelly, Stivers and Gardiner had no agreement with Celia Berrien for payment of compensation for services rendered to her as executrix of the will of Chauncey L. Berrien. On that point Mr. Stivers testified:

"Q. Is it not a fact, Colonel, that you concluded that after Mrs. Berrien was dead and that she left a will giving her property to the party who is making this motion here—you concluded at that time you should receive a fee, did you not? A. That states it very briefly and very thoroughly. The fact that I had not charged her prior to her death was a state of mind induced by sympathy and the desire that she should have as much as she possibly could from the estate to live on; but after her death I concluded that I owed nothing whatever to the heirs, and felt that my services were entitled to recompense.

"Q. It was your intention, however, prior to that time to make no charge? A. It was my intention to make her a present, in her living person, but not her estate."

Mr. Gardiner wrote a letter to relator's counsel in which he said: "When we were advised that the estate of Chauncey L. Berrien deceased, was to go to a party in whom none of us was interested a new situation was created."

Judge Downey, who made the order allowing the fee of the administratrix and the attorneys' fees, testified as follows:

"Q. I mean, particularly, the matters that were handled by Mrs. Berrien; did you familiarize yourself on this hearing with what she had done? A. Not right at this particular hearing. I had those files in the office for quite a length of time, and had many conversations with Mr. Gardiner and Mrs. Gavigan.

"Q. Did you familiarize yourself with the completed inventory which was filed by Mrs. Berrien? A. I remember looking through it, yes. To recall all the items; I couldn't do that.

"Q. Did you familiarize yourself with the decrees that had been entered with reference to creditors? A. I remember at the time as to what claims had been allowed, and the amounts.

"Q. Did you know at that time how long Mrs. Berrien had served as executrix of her husband's will? A. Not exactly; no sir.

"Q. In determining the inheritance tax or the appraisers' fee, you did not know what length of time she had served or what service she had performed?

"The Court: Appraisers' fee?

"Mr. Nolan: Administratrix's fee.

"A. No, not in particular the service she performed. I looked through there to see if she ever had been allowed anything as a fee for the services she had rendered.

"Q. Did you know how much of the estate she had accounted for; that is, Mrs. Berrien, as executrix? A. I remember—I couldn't say the amount at this time, but I remember some conversation in the office at one time.

"Q. In determining the fee to be paid to Mrs. Gavigan, you did not take into consideration the amount of the estate that had been accounted for by her predecessor in office? A. I took into consideration the value of the estate as Mrs. Gavigan handled it.

"Q. The part she handled? A. The value of the estate that came into her hands and the amount she accounted for in her reports."

On cross-examination Judge Downey testified:

"Q. The time of this hearing, Judge, on this first and final account and report and petition for final distribution, you were advised, were you not, there was just one fee being provided for the representative? A. Yes.

"Q. And your view in the matter was the entire amount had been accounted for—the fee to be fixed was the statutory amount based on the amount she accounted for? A. The amount she had in her hands, the amount of the estate, and the statutory allowance, or percentage for that amount.

"Q. You knew there was no other fee provided for any other representative? A. I was told that, and that is why I looked through the files.

"Q. You knew there was no fee provided for Mrs. Berrien or any representative of hers? A. Yes.

"Q. You were advised, were you, Judge, that Mrs. Gavigan, as administratrix, had agreed to pay Mr. Kelly and Mr. Stivers and Mr. Gardiner the sum of $5,000 for attorneys' fees for their services in connection with the estate? A. Yes, sir.

"Q. At the time of the settlement of the final account, you allowed that amount as attorneys' fees? A. Yes.

"Q. And $1,300.40 for administratrix's fees? A. Yes."

And on recross-examination Judge Downey testified:

"Q. In determining this fee, you had in mind the fee for the attorneys during the entire services rendered? A. $5,000 were allowed for representing Mrs. Gavigan and Mrs. Berrien.

"Q. Any disposition they cared to make was up to them as individuals, of course? A. Yes, that was up to them.

"Q. You knew the fee was being paid to Mr. Kelly and Mr. Stivers and Mr. Gardiner for their services to Mrs. Berrien? A. Yes."

As to the allowance of the fee to the administratrix there is evidence that Gardiner agreed with Frazer, one of counsel for relator residing in California, that Mary Gavigan would not be entitled to the full statutory fee, and that Gardiner promised to give him a copy of the final account and petition for distribution before the original was filed, and that he did not do so. Gardiner on this point testified that Frazer asked him about the Mary Gavigan fee and that his reply was "that she probably would not," evidently meaning that she probably would not demand the entire statutory fee. He said that Frazer did not tell him that he wished to be advised of the administratrix' and attorneys' fees prior to the settlement of the account.

As to what facts were called to the attention of the court by Mary Gavigan at the hearing on her account and petition for distribution, she testified:

"Q. During the course of your administration of the estate, Mrs. Gavigan, did you file a first and final account? A. I did.

"Q. And a petition for distribution in this estate? A. Yes.

"Q. At the time of the hearing of this account, did you call the contents of your account to the court's attention? A. I did.

"Q. Did you call the court's attention to the fact that Celia Berrien had preceded you as representative of the estate? A. Yes.

"Q. Did you call the attention of the court to the fact that she was appointed on the 31st day of May, 1932, as executrix? A. Yes.

"Q. And that on the 4th day of August, 1932, she filed and returned the inventory and appraisement in that estate? A. Yes.

"Q. And that she caused notice to creditors to be published and any such claims as any creditors might have to be pre-

sented, that notice being on the 28th day of July, 1932?
A. Yes.

"Q. Did you call the attention of the court to the fact that
the inventory which the executrix, Mrs. Celia Berrien, filed
showing the value of the property of the estate to be $22,170.54?
A. Yes.

"Q. Did you in your petition for distribution and final
account request that the fees of yourself, as administratrix,
and the attorneys for the estate to be determined and ordered
paid? A. Yes.

"Q. Did you call the court's attention to the fact that
you had agreed to pay the sum of $5,000 to the attorneys for
their services in connection with the estate? A. Yes.

"Q. In speaking of the attorneys, was there more than one
attorney representing yourself? A. No, just Mr. Gardiner.

"Q. Who were the attorneys that represented Mrs. Berrien?
A. Mr. Kelly and Mr. Stivers.

"Q. Were they the only ones? A. And Mr. Gardiner.

"Q. Did you call to the court's attention the fact that there
was only one fee to be paid the representatives of the estate?
A. I believe I did.

"Q. Did you call the court's attention to the fact that
the fee that was being allowed to yourself as administratrix
was the full statutory fee for your services? A. Yes, I did."

From the evidence foregoing it appears that there is at least
some evidence in the record to support the conclusion of the
court that the items complained of in the decree were not
entered through the inadvertence alleged. There was some
evidence that the court's attention was called to the matters
alleged to have been withheld from the attention of the
court.

Judge Downey was advised that Mary Gavigan had agreed
to pay the attorneys who had acted for the executrix Celia
Berrien. It may be that Mary Gavigan should not have made
this agreement, but the court in the exercise of its discretion
approved of the agreement as made. In this the court may
have been in error, but it cannot be said that in approving

of the agreement the court acted through inadvertence. "Inadvertence" means a want of care, inattention, carelessness, negligence or oversight. (Compare Funk & Wagnall's New Standard Dictionary; Ballentine's Law Dictionary with pronunciations; *Greene* v. *Montana Brewing Co.*, 32 Mont. 102, 79 Pac. 693; *Corona Coal Co.* v. *Sexton*, 21 Ala. App. 51, 105 So. 716; *St. Paul Fire & Marine Ins. Co.* v. *Earnest*, (Tex. Civ. App.) 293 S. W. 677; *Tremont Trust Co.* v. *Burack*, 235 Mass. 398, 126 N. E. 782, 9 A. L. R. 1067.)

There being some substantial evidence to the effect that the court's attention was called to the facts essential to a proper determination of the questions presented to it and that the court considered the facts alleged to have been withheld from its attention, we are not disposed to interfere with its action in holding that there was no inadvertence, even though there was some evidence from which it might have held otherwise. Compare *McManus* v. *Larson*, 122 Cal. App. 716, 10 Pac. (2d) 523; *State ex rel. Zosel* v. *District Court*, 56 Mont. 578, 185 Pac. 1112.

It may be that the court erred in making the awards complained of, but, if so, its action was reviewable on appeal. (Sec. 9731, Rev. Codes 1921.) We are not warranted in holding that the respondents were in error in finding that the items complained of were not entered through inadvertence as alleged. Unless they were entered through inadvertence, the motion was properly denied.

The writ applied for is denied and the proceeding is dismissed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

Rehearing denied June 9, 1934.