STATE EX REL. CLARK, RELATRIX, *v.* DISTRICT COURT
ET AL., RESPONDENTS.

(No. 7,554.)

(Submitted March 23, 1936. Decided April 21, 1936.)

[57 Pac. (2d) 809.]

*Mr. R. F. Gaines* and *Mr. Eugene Kelly* of the Bar of Los Angeles, California, for Relatrix, submitted an original and a reply brief; *Mr. Kelly* argued the cause orally.

*Mr. Harry Meyer,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This was an original application to this court for a writ of supervisory control to annul an order of the district court of Silver Bow county denying a motion to set aside and vacate, upon the grounds of fraud and inadvertence, an order awarding attorney fees and directing their payment in the matter of the estate of W. A. Clark, III, deceased. On the application of the relatrix, Thelma W. Clark, this court caused to be issued and served upon the respondent judge, the Honorable Frank L. Riley, an alternative writ of supervisory control. On the return day, in response thereto, there was filed a motion to quash the writ on the ground that the application does not state facts sufficient to entitle the relatrix to any relief; that relatrix has a remedy by appeal; and that the record fails to exhibit all of the evidence received by the trial judge who heard the petition for attorney fees.

With reference to the contention that the relatrix has a remedy by appeal, the effect of this contention must be denied on the authority of the case of *State ex rel. Regis* v. *District Court*, ante, p. 74, 55 Pac. (2d) 1295, wherein the same question was raised in an original proceeding seeking to annul an order of the district court of Silver Bow county vacating and setting aside an allowance of an extraordinary executor's fee in the same estate.

It appears from the petition for the writ that relatrix is the widow of W. A. Clark, III, and that she was the residuary legatee and devisee under the last will and testament of the deceased; that on June 30, 1932, the will was admitted to probate in the district court of Silver Bow county and letters testamentary were issued to her and her coexecutor, Oscar Regis, on that day, and that they qualified and have continued to act in that capacity; that an ancillary administration was had in the state of California, and one Fred J. Furman, an attorney, acted as their attorney in both probate proceedings;

that on May 20, 1935, the matter of the settling of the accounts of the executors and distribution of the estate came on to be heard before the Honorable T. E. Downey, Judge of department 2 of the district court of Silver Bow county, and in connection with that matter Furman presented his petition to the court for the allowance of a reasonable attorney's fee for services rendered to the estate as its attorney; that the judge allowed Furman the sum of $82,500 as a reasonable fee, and on the same day Furman was paid this sum less the sum of $10,300.84 previously paid on account by Oscar Regis, the coexecutor.

The relatrix alleges further that on May 31, 1935, she was advised of the order allowing the attorney fees and presented to the district court a motion to set aside the order allowing this attorney fee, based on section 10303, Revised Codes 1921, asserting that the order was the result of inadvertence and .fraud practiced upon the court and the relatrix. This motion was founded upon an affidavit which we will presently notice more in detail. After this motion was filed, Judge Downey having been disqualified, it was transferred to the Honorable Frank L. Riley for hearing and decision. A hearing was had before Judge Riley on July 30, 1935, after a continuance, at which certain oral and documentary evidence was introduced. Thereafter, on January 25, 1936, an order was entered denying the motion of relatrix to set aside the order fixing attorney fees.

Mrs. Clark, in her affidavit in support of her motion to set aside the order, alleged that Fred J. Furman had repeatedly during the administration of the estate represented to her, to the court, and to the collector of internal revenue that the full attorneys' and executors' fees would not exceed from $35,000 to $50,000; that he at no time prior to the hearing represented to her that he was entitled to any fees for extraordinary services rendered to the estate, or that any services rendered by him were in addition to those which are rendered by an attorney representing an executor; that at no time, until after the hearing on May 20, 1935, did she have any intimation that Fur-

man claimed he had performed any services that would entitle him to fees in a greater amount than his proportion of from $35,000 to $50,000 represented to include the total amount of attorneys' and executors' fees; that at no time, until after the hearing, did she have any intimation that Furman intended to present evidence other than the first and final account of the executor in connection with the request of the executor that the court determine the attorney fees; that at no time did any person inform her that Furman had filed a verified petition in court setting forth numerous purported services performed by him for the benefit of the estate; and that she did not see the petition or a copy thereof or have the information, either direct or indirect, as to its contents or the fact of the existence of it or the filing of the document until after the hearing.

She further alleges that her coexecutor, Oscar Regis, prepared the first and final account which was sent to her for her examination and approval in Washington, D. C., where she resided for several months prior to May 20, 1935; that this account contained a request of the executors that the court fix a reasonable attorney's and executors' fees; that when she signed this request it was done in reliance upon the representations made to her by Furman as to the amount of the fees. It is stated in her affidavit that she had been informed and believed that on a hearing with reference to the inheritance tax held on or about April 15, 1935, Furman claimed as an exemption an attorney fee in the sum of $70,000, but that she was not advised by any person that such claims were made; that on several occasions subsequent to her appointment on June 30, 1932, when she was present in court, Furman represented to her that her further appearance in court was not necessary to the further administration of the estate; that when the first and final account was forwarded to her at Washington, D. C., for examination and approval, Furman wrote her a letter explaining various features of the account, but made no reference to attorney's or execu-

tors' fees; that he did not suggest to her that it would be necessary or proper for her to appear in court on the hearing on the petition for attorney's fees, or any other petition relating to the estate; that in this letter Furman assured her that "there is no reason on earth why you should change your plans," and stated that by the time she reached California the estate would be distributed to her.

She alleges that until after the hearing she had full confidence in the integrity of Furman, who assured her repeatedly that he and Regis, her coexecutor, would do everything possible to protect her interests; that she had no reason to believe that any question would be presented to the court that had not previously been agreed upon between her coexecutor and attorney, or that could or might result in fees being assessed against the estate in large amounts never before mentioned to her by any person. It is stated in the affidavit that she is informed that Furman on the hearing to fix the attorney fees had secured as witnesses some five attorneys who testified in court as to the reasonable value of his services in sums from $82,500 to .$110,000; that no one had advised her that it was usual or proper for an attorney to file such a petition or for other attorneys to appear in court to testify to the reasonable value of his services, nor that the question of the reasonable value of the attorney's services was a question of fact, and that if she had been advised as to her right to appear on this hearing she would have appeared with counsel other than the attorney for the estate, and protected her interests.

She also alleged that she was without knowledge that her attorney had claimed an attorney fee of $70,000 as an allowable deduction for inheritance tax purposes, and that, had she been advised of these claims, she would have produced evidence in contravention of the allegations of the petition of Furman and the testimony offered in support thereof.

In the petition of Furman the many services which he asserts he rendered as attorney for Mrs. Clark are enumerated in detail. She in her affidavit alleges that one of the items ·

was a reduction of approximately $6,000 secured in the amount of the federal income tax in connection with the valuations of certain stocks, the property of the estate, and from this petition it appears, at least inferentially, that Furman was responsible for this reduction; whereas Mrs. Clark alleges that, although a conference occurred on this matter at Washington, D. C., resulting in the settlement of certain controversies in connection with the inheritance tax, Furman took no part in the conference, was not present in Washington, but that one Paul Armitage acted as the attorney for the estate and was paid $2,500 for his services.

Mrs. Clark further asserts that the claim made in the petition of Furman that he had performed valuable services in securing a cancellation of a lease on an apartment house, resulting in a saving to the estate in the sum of $13,000 was without foundation. She alleges that no services were performed by Furman in this connection, that no claim was ever presented either in Montana or California as the result of the lease, and that at the time of the alleged settlement the statutory time for the allowance of claims had expired.

Another item for which Mr. Furman in his petition asserts he performed services for the estate was the securing of an advantageous sale of certain stock in the United Verde Company, which increased the assets of the estate to the extent of $186,000. Mrs. Clark in her affidavit alleges that Mr. Furman neither added to the value of this stock nor ever suggested a concrete plan for, nor otherwise secured, a more favorable price for it than could have been obtained. Mrs. Clark further alleges that a transaction, whereby her attorney and coexecutor secured a certain ranch which was asserted in the petition for allowance of attorney fees to have been a valuable acquisition to the assets of the estate, was in truth and fact a great detriment and would cause her the loss of a substantial sum.

Mr. Furman filed a counter-affidavit resisting this motion, by which a conflict was raised between his affidavit and that of Mrs. Clark as to the services he rendered. He does not, how-

ever, dispute or deny the representations alleged to have been made with reference to the attorney fee as stated by Mrs. Clark unless the following statement may be said to serve that purpose; that he "repeatedly over a period of years told Thelma W. Clark that the fees would be fixed by the court in conformity with the law at the termination of the said estate and upon hearing of the final account and petition for final distribution."

Mr. Regis testified on the hearing on the motion to substantially the same statement found in the affidavit of Mr. Furman. There was also received in evidence on the hearing on this motion a copy of the petition signed by Mr. Furman as attorney, dated June, 1934, for the sale of personal property in the estate, wherein it was represented to the court that the executors' and attorney's fees would amount to approximately the sum of $50,000. The relatrix had notice that a hearing would be had on May 20, 1935, to fix reasonable attorney fees. The petition of the attorney was to have the court determine the amount of reasonable attorney fees to be paid to him. It does not suggest or allege any specific sum as being the proper amount to be awarded.

Section 10303, Revised Codes 1921, provides that a decree settling an account may upon motion within sixty days after the rendition, on the ground of inadvertence, or within sixty days after the discovery of the facts constituting fraud, be set aside. (*State ex rel. Brophy* v. *District Court*, 95 Mont. 479, 27 Pac. (2d) 509; Id., 97 Mont. 83, 33 Pac. (2d) 266.) The order fixing the attorney fees was a separate instrument from the decree of the settlement of account; however, the order was in truth and in fact a part and parcel of the proceedings for the settlement of the account. (*State ex rel. Regis* v. *District Court*, supra.)

"Inadvertence," within the meaning of the above section 10303, means a want of care, inattention, carelessness, negligence or oversight. (*State ex rel. Brophy* v. *District Court*, supra, and *State ex rel. Regis* v. *District Court*, supra.)

It is said in the brief in support of the respondent court that the question arises whether Mr. Furman was guilty of actual and intentional fraud in procuring from the court the order fixing the attorney fees. This court is committed to the rule that relief may be had from a judgment secured through extrinsic fraud if the fraud be constructive. (*Bullard* v. *Zimmerman*, 88 Mont. 271, 292 Pac. 730. See, also, *Stocking* v. *Charles Beard Co.*, ante, p. 65, 55 Pac. (2d) 949.)

The affidavit of relatrix clearly reveals the fact that in no manner had Mr. Furman or anyone else advised her that he was seeking an attorney fee in any such amount as the court allowed or as to which he produced evidence tending to prove the amount to be a reasonable attorney fee. Her affidavit stated repeatedly that Mr. Furman had advised her that the attorney fee and cost of administration would be from $35,000 to $50,000. The statement found in Furman's affidavit to the effect that he had advised Mrs. Clark that the amount of the attorney fee would be fixed by the court at the close of the estate, is not so inconsistent with the representations claimed to have been made as to disprove them; in other words, the representation that the executors' and attorneys' fees would be from $35,000 to $50,000 would indicate that by some method or means a determination of the exact amount would be made. The statement made in the petition for sale of personal property in the year 1934 tends to corroborate the statement in the affidavit of Mrs. Clark as to the representations referring to the total costs and charges of administration.

On the hearing before Judge Riley, it appeared from the affidavits, documents and testimony that the relatrix was prevented, because of the failure of the attorney in the case to disclose to the relatrix his intention to attempt to secure an attorney fee greatly in excess of the amount which he had theretofore represented to his client that it would be, from appearing and presenting her side of the controversy. It also clearly appears from the facts set forth in the record that, had relatrix known of this intention, she would have appeared and

resisted the application. This she failed to do by reason of the course of conduct of her attorney.

We have said, with reference to a contract made between ██ attorney and client after the creation of the fiduciary relation, that it is the duty of the attorney to give his client full information and advice with respect to a matter, so as to enable the client to act understandingly and freely, as one dealing at arm's length with another. (*Coleman* v. *Sisson,* 71 Mont. 435, 230 Pac. 582.) We think these observations are clearly applicable to a transaction of this character.

We have held frequently, with respect to judgments which were obtained by an attorney as the result of representations and statements made to the adverse party which prevented such party from interposing a defense, that relief will be granted from such judgments. (*Bullard* v. *Zimmerman,* supra; *Stocking* v. *Charles Beard Co.,* supra; *Kirby* v. *Hoeh,* 94 Mont. 218, 21 Pac. (2d) 732.) In order to secure this relief in the ordinary action, such as was involved in the cases just cited, it was incumbent upon the plaintiff therein to show that in the original action wherein judgment was recovered, he had a prima facie good defense to the cause of action or some part of it.

The relatrix asserts in her affidavit that certain of the services for which Mr. Furman claims compensation were not performed by him. These allegations are denied by the counter-affidavit. She further asserts that if she is heard on the petition to fix attorney fees on its merits, she will produce testimony tending to show that the services were reasonably worth a much smaller sum than that which was found by the trial court, all of which would prima facie establish a defense *pro tanto* to the petition.

It is asserted in behalf of respondent court that the motion ██ to quash should be sustained by reason of the fact that all of the testimony which was heard by Judge Downey is not before this court. We are not here, nor was Judge Riley in passing on the motion in the lower court, reviewing the cor-

rectness of the ruling made by Judge Downey on the testimony and proceedings before him.

We conclude, from a review and consideration of the affidavits and testimony before Judge Riley on the hearing on the motion, that the order fixing the attorney fees was secured as a result of constructive fraud extrinsic in character, and that relatrix on her showing established that she had a prima facie defense in part to the attorney fees as claimed by the testimony produced in the hearing before Judge Downey. Therefore Judge Riley should have granted the motion to set aside, vacate and annul the order fixing the attorney fees.

It is urged on behalf of the relatrix that we should in this proceeding direct the entry of an order fixing the amount of the attorney fees; but, as we view the situation, the reasonableness of the fee due the attorney in the case has never been fairly litigated, and cannot be so determined in a proceeding of this kind in view of the fact that neither tribunal has, or had, all of the evidence on that question before it.

It is therefore ordered that a peremptory writ of supervisory control issue out of this court to the district court of Silver Bow county, directing it to vacate, annul and set aside the order fixing attorney fees, and directing their payment, and that the court proceed, after notice, to hear the petition and thereafter enter its judgment.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

Rehearing denied May 11, 1936.