MOSER, Appellant, *v.* FULLER et al., Respondents.

(No. 7,752.)

(Submitted December 12, 1938. Decided December 29, 1938.)

[86 Pac. (2d) 1.]

*Messrs. Speer & Hoffman,* for Appellant, submitted a brief; *Mr. Harvey B. Hoffman* argued the cause orally.

*Mr. D. W. Doyle, Mr. E. E. Sweitzer* and *Messrs. Church & Jardine,* for Respondent, submitted a brief; *Mr. Doyle* argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

By this action plaintiff, appellant here, seeks to set aside for fraud, both a judgment obtained against him by the First Na-

tional Bank of Valier on three promissory notes, and the sale of his ranch under that judgment. The defendants are P. C. Kivilin, as receiver of the bank, C. H. Kester, the former president and manager thereof, and C. P. Fuller, to whom the judgment was assigned by the bank and by whom the land in question was bought at sheriff's sale under the judgment.

The complaint is voluminous with reference to appellant's speculation in grain futures, in which he used the facilities of Kester and the bank for the transmission of funds to his Minneapolis brokers; but the substance of the complaint in this respect is that "with the possible exception" of note No. 1, the notes sued upon by the bank represented in fact no funds transmitted to the brokers, but were obtained by Kester fraudulently and without consideration, and as his own enterprise, for the sole purpose of enabling him to acquire appellant's ranch, and were not the property of the bank; that Fuller's acquisition of the judgment and the sheriff's deed thereunder was without consideration and as trustee for Kester in the furtherance of the latter's fraudulent scheme.

The fraud alleged with reference to the judgment on the notes was that at the trial Kester offered "false and perjured testimony to the court in support of the complaint" and "did knowingly and wittingly practice fraud and deception upon the said District Court of Pondera County by wrongfully testifying that the said notes No. 1, 2 and 3 were the property of the said bank, which, he testified, was the lawful holder thereof, when in truth and in fact he knew that the said notes or at least notes No. 2 and 3 were at no time the property of the said bank nor held by it, nor were the same reflected in the books or business of the said bank; and were held and owned by him personally and for his own wrongful private gain." The complaint further states that appellant was unable to appear at the trial of the suit on the notes, because he was outside of the state and unable to return, and because the trial court denied him a continuance; that the decree was entered on March 10, 1933, and that he did not learn of the alleged fraud until February

428

16, 1935. The complaint in this action was filed on February 26, 1935.

The answer placed in issue these questions of fraud, want of consideration, and the bank's ownership of the notes.

Appellant testified that he was notified of the judgment on March 11, 1933, the day after its entry and nearly two years before the institution of this suit.

The trial court found for the defendants on all issues, and found that the notes were given to the bank in consideration of money to be used for purchasing grain futures; that the money was forwarded by the bank to the brokers at Minneapolis, and that neither Kester nor the bank was guilty of misrepresentation or fraud; that the three notes were given for a valuable consideration and belonged to the bank, and that when the note action was filed nothing had been paid thereon but the sum of $410.54 with which he had been credited; that in his answer in that suit appellant had admitted execution of the notes and alleged that they were given without consideration; that Kester's testimony correctly showed the amount due, owing and unpaid upon them, "and was true and was not a fraud or deceit upon the Court"; that appellant long prior to the expiration of six months after the judgment in the note action knew of its entry, but took no steps to set aside or vacate the judgment; that the judgment was assigned to Fuller for valuable consideration, and that the land was rightly his under the sheriff's deed. The court's conclusions were that the defendants had transmitted to the brokers the funds represented by the three notes, that they were not indebted to appellant, and that the judgment on the notes, the assignment thereof and the sheriff's sale thereunder were valid. In accordance therewith judgment was entered for the defendants and against the appellant in this suit.

In some respects the evidence was not entirely satisfactory; there were irregularities in the bank's records with reference to many of these transactions, which were explained by the fact that they represented excess loans and were therefore

handled irregularly. However, there was a substantial conflict in the evidence, which was resolved by the trial court in defendants' favor, and it cannot be said that there was no sufficient evidence in support of the judgment, or that the evidence decidedly preponderated against it. (*Pope* v. *Alexander,* 36 Mont. 82, 92 Pac. 203, 565.) Certainly, there is credible evidence in the record in support of the judgment. However, it is not necessary to go further into the sufficiency of the evidence, for the reason that the complaint fails to state facts sufficient to constitute a cause of action for the setting aside of a judgment on account of fraud.

There is a serious question whether, if the bank and its witnesses in the note action were guilty of the fraud claimed by appellant, and if it were such fraud as would ordinarily entitle him to attack the judgment in this way, he would have that right here, in view of his prompt notification of it and his failure to take steps in the original action to have the judgment vacated. His contention is that he first learned of the alleged fraud some twenty-three months after entry of judgment, and only ten days before filing his equity suit to set it aside. However, the alleged fraud related only to the questions whether there was consideration for the notes, and whether the amounts claimed were due, owing and unpaid to the bank, both of which questions were raised by appellant's answer in that case.

But in any event, the fraud claimed by appellant in the note action was intrinsic and not extrinsic. It is too well settled in this jurisdiction to be now questioned that relief of the kind here sought can be given only for fraud which is extrinsic or collateral to the matter tried by the court, and not for fraud in the matter on which the judgment was rendered. (*Kennedy* v. *Dickie,* 34 Mont. 205, 85 Pac. 982; *Dunne* v. *Yund,* 52 Mont. 24, 155 Pac. 273; *Clark* v. *Clark,* 64 Mont. 386, 210 Pac. 93; *Hall* v. *Hall,* 70 Mont. 460, 226 Pac. 469; *Hoppin* v. *Long,* 74 Mont. 558, 241 Pac. 636; *Bullard* v. *Zimmerman,* 82 Mont. 434, 268 Pac. 512; *Bullard* v. *Zimmerman,* 88 Mont. 271, 292 Pac. 720; *Frisbee* v. *Coburn,* 101 Mont. 58, 52 Pac. (2d)

882; *State ex rel. Clark* v. *District Court*, 102 Mont. 227, 57 Pac. (2d) 809; *Minter* v. *Minter*, 103 Mont. 219, 62 Pac. (2d) 233.)

In *Hall* v. *Hall*, supra, this court said: "While the authority of a court of equity to vacate a decree of divorce obtained by fraud is inherent, the acts for which the relief may be granted have reference only to fraud which is extrinsic or collateral to the matters tried by the court, and not to fraud in the matters on which the decree was rendered. (*Clark* v. *Clark*, above.) In order to reach a judgment in the divorce action it was necessary for the court to determine whether the allegations of the complaint were true, and to that end to determine the truth or falsity of the evidence given in support of those allegations. In other words, the matters which it is now claimed constitute the fraud practiced upon the court are the very matters upon which the court passed in arriving at a judgment. Neither the falsity of the allegations in the complaint nor the falsity of the testimony given upon the trial constitutes extrinsic fraud within the meaning of the rule. (*United States* v. *Throckmorton*, 98 U. S. 61, 25 L. Ed. 93.)"

And in *Dunne* v. *Yund*, supra, it was said: "To have a decree set aside for fraud, it is necessary for the complaining party to allege and prove fraudulent acts by his adversary in some matter collateral to the issue on trial, by which he was prevented from having a hearing. 'The fraud in respect to which relief will be granted in any case must have been practiced upon the unsuccessful party, with the result that he has been prevented from fully and fairly presenting his case for consideration. In short, the situation in the case must have been such that there has never been a decision in a real contest over the matter in controversy.' (*Kennedy* v. *Dickie*, 34 Mont. 205, 85 Pac. 982.) In other words, the fraud must have been extrinsic and collateral to the matter tried in the former action, and not in a matter tried upon its merits and upon which the decision was rendered. That the offending party imposed upon the court, that he procured his judgment upon a forged instrument or by

the use of perjured testimony, or other similar fraud, cannot avail. The possibility of the presence of this character of fraud is always to be anticipated, and each party must be prepared to meet and expose it then and there. If he fails to do this, he cannot thereafter question the validity of the result.''

The reason for the rule is well stated as follows by the United States Supreme Court, in *United States* v. *Throckmorton,* referred to above: ''We think these decisions establish the doctrine on which we decide the present case; namely, that the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered. That the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterward ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases.''

The allegations of fraud in the appellant's complaint are purely of intrinsic fraud. It follows, therefore, that it fails to state a cause of action to set aside the judgment on account of fraud.

Intermingled with the attempted statement in the complaint of a cause of action for fraud were allegations setting forth a right in appellant to have a certain recorded mortgage released. The trial court found for him upon that point and entered judgment accordingly. While that matter should properly have been stated as a separate cause of action, there seems to be no doubt of its sufficiency, and no question is raised upon this appeal with reference to that part of the judgment.

Judgment affirmed.

ASSOCIATE JUSTICES STEWART, ANDERSON, MORRIS and ANGSTMAN concur.