No. 87-024

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

ANTHONY E. BROWN,

        Plaintiff and Appellant,

   -vs-

RICHARD JENSEN, VERLIN L. FOSSUM, STAN
REEP, WILLIAM SEAY, LARRIE SMITH, JAMES
HAUGHEN, WINFIELD OSTWALD, LOYE H. ASHTON,
CARL R. LARSON, GEORGE EVERSON, AND ELDIN
R. JOHNSON, jointly and severally,

        Defendants and Respondents.


APPEAL FROM:  District Court of the Nineteenth Judicial District,
               In and for the County of Lincoln,
               The Honorable Arnold H. Olsen, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Patrick F. Flaherty, Flaherty, Lord and Winner; Great
           Falls, Montana

      For Respondent:

           Debra D. Parker, Murphy, Robinson, Heckathorn and
           Phillips, P.C.; Kalispell, Montana

           Fred Rathert, Bjella, Neff, Rathert, Wahl and Eiken, P.C.,
           Williston, North Dakota


                    Submitted on Briefs:  February 25, 1988

                              Decided:  April 11, 1988

Filed:   APR 1 1 1988

_____
                     Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Anthony E. Brown (Brown) appeals from the order of the Lincoln County District Court granting summary judgment to defendants Jensen et al. (Williston Group) and assessing Rule 11, M.R.Civ.P., sanctions against Brown and his attorney, Patrick F. Flaherty (Flaherty). We affirm.

Brown brought this action in February of 1986 to have a partition order in Lincoln County District Court Cause No. DV-82-94 set aside or declared void. The alleged fraudulent actions of defendants Jensen et al. in obtaining the order of partition in Cause No. DV-82-94 was the basis for the relief sought in Brown's complaint. Jensen et al. reside in Williston, North Dakota, and are referred to as the "Williston Group."

Lincoln County District Court Cause No. DV-82-94 involved a partition action brought by the Williston Group against Brown with regard to approximately eighty-three acres of land located in Lincoln County and known as "Throops Lake." Brown had acquired an option to purchase the Throops Lake property for $15,000, but did not have the money to purchase the property by the option deadline. On January 31, 1982, Brown conveyed his option on the Throops Lake property to the Throops Lake Lumber Company of Williston, North Dakota. Throops Lake Lumber Company's shareholders were the Williston Group and Brown. The Williston Group then contributed more than $250,000 toward the purchase of the Throops Lake property. Shortly after Brown and the Williston Group acquired Throops Lake, a disagreement between the parties prompted Brown to deny the Williston Group access to the property.

2

On May 27, 1982, the Williston Group instituted the partition action in Lincoln County District Court. On June 1, 1982, Brown filed a Chapter 11 bankruptcy petition in the Montana District of the United States Bankruptcy Court. The bankruptcy court issued a stay of the Montana District Court proceedings that was later lifted by stipulation of counsel.

Brown originally appeared with the assistance of an attorney in the partition action and later appeared pro se. The District Court conducted a hearing, found the parties to be tenants in common, and on April 5, 1983, ordered that the "Throops Lake" property be partitioned by sale. Brown did not file an answer to the Williston Group's complaint until after the District Court's order of partition. A court appointed referee sold the "Throops Lake" property on May 17, 1983, at public auction to the Williston Group, they being the only qualified bidders present at the auction. Brown was present at the auction and received $15,000 as his share of the partition sale proceeds. Brown also executed a quit claim deed in favor of the Williston Group on the day of the partition sale.

On February 6, 1986, nearly three years after the District Court's order of partition in Cause No. DV-82-94, Brown requested that the case be reopened. The District Court noted that Brown had made no showing of excusable neglect and refused to reopen the action.

On February 8, 1986, Brown filed this independent action in Lincoln County District Court to have the judgment in the partition action vacated on the basis of the Williston Group's alleged fraud in obtaining the judgment. The Williston Group moved for summary judgment and requested that they be awarded attorneys' fees and costs pursuant to Rule 11, M.R.Civ.P. Both parties submitted affidavits and the District Court conducted a summary judgment hearing on

3

October 6, 1986. In its order of December 8, 1986, the District Court found the following to be undisputed facts:

> [Brown] stipulated, while Lincoln County Cause No. DV-82-94 was still pending, that the automatic stay in bankruptcy be lifted and the bankruptcy judge so ordered. After the automatic stay was lifted the Honorable Robert Holter, Judge of the District Court, Lincoln County, Montana, ordered Throops Lake partitioned and sold. Following the Court ordered sale of Throops Lake, [Brown] accepted his share of the sale proceeds, released the referee conducting the sale from all liability, and executed a quit claim deed in favor of the defendants. [Brown] did not, at any time, appeal the judgment ordered by Judge Holter, but rather commenced the instant action, seeking relief from the judgment, after more than two years had elapsed from the date Throops Lake was sold.

From these undisputed facts, the District Court made the following conclusions:

> Viewing all of the files and affidavits presented herein in the light most favorable to [Brown], reasonable minds could only conclude that no extrinsic fraud was perpetrated upon the Court so as to justify relieving the plaintiff from the judgment rendered in Lincoln County Cause No. DV-82-94. The Court accordingly finds that there is no genuine issue of material fact, and that [the Williston Group] is entitled to judgment as a matter of law.
>
> The Court further finds that plaintiff, Anthony E. Brown, and his attorney, Patrick Flaherty, knew, or would have known after reasonable inquiry, that the complaint in this action was not well grounded in fact or in law. The Court has taken judicial notice of other actions filed by [Brown] against these

4

> same defendants, namely Lincoln County Cause No. DV-85-23, and United States District Court Cause No. CV-85-037-M, as well as [Brown's] attempt to reinstate Lincoln County Cause No. DV-82-94, which was denied in February of 1986. The Court has taken further judicial notice of Lincoln County Cause No. DV-85-188, in which Attorney Flaherty is representing plaintiffs Marc Flora and Steve Neustrom in an action against most of the defendants named in this action. In view of the multiple lawsuits previously filed against the defendants, the proceedings held in Lincoln County Cause No. DV-82-94, wherein [Brown] had his day in court, reasonable minds could only conclude that the instant action was interposed by [Brown] and his attorney in order to harass the defendants or to cause unnecessary delay or needless increase in the cost of litigation.

The District Court entered summary judgment in favor of the Williston Group with costs to be taxed against Brown. The District Court also awarded reasonable expenses of litigation, including attorneys' fees, as Rule 11, M.R.Civ.P., sanctions against Brown and Flaherty, jointly and severally. The Williston Group's total award is $13,746.16. Brown and Flaherty appeal from the District Court's judgment and raise the following three issues for our review:

1. Did the District Court err in granting the Williston Group's motion for summary judgment and specifically in concluding that no genuine issue of material fact exists?

2. Did the District Court err in imposing Rule 11, M.R.Civ.P., sanctions against Brown and his attorney, Patrick Flaherty?

3. Is the Rule 11, M.R.Civ.P., award of attorneys' fees and expenses of litigation unreasonable and excessive?

5

Brown relies on two statutes as authority for setting aside the judgment in the partition action. The first statute, § 26-3-105, MCA, provides as follows:

> Any judicial record may be impeached by evidence of a want of jurisdiction in the court or judicial officer, of collusion between the parties, or of fraud in the party offering the record in respect to the proceedings.

The Williston Group claims that this statute is a rule of evidence and merely sets forth the circumstances under which a judicial record may be impeached. We agree. Section 26-3-105, MCA, does not provide for the remedy Brown seeks and the statute does not apply to the circumstances of this case.

Brown also relies on Rule 60(b), M.R.Civ.P., as authority for setting aside the order of partition in the earlier action. Rule 60(b), in pertinent part, provides the following:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . .
>
> This rule does not limit the power of the court to entertain an independent action to relieve a party from judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as may be required by law, or to set aside a judgment for fraud upon the court.

The last sentence of the above statute preserves a district court's power to entertain a separate equity suit to set aside a judgment. Selway v. Burns (1967), 150 Mont. 1, 8, 429 P.2d 640, 644. This power to grant relief from a

judgment in equity is inherent in the district court and does not depend upon statute. Bullard v. Zimmerman (1930), 88 Mont. 271, 277, 292 P. 730, 732. It is this equity power that Brown seeks to invoke in this action.

The fraud for which relief may be granted in equity actions such as this is extrinsic, or collateral, fraud rather than intrinsic fraud. In Re Marriage of Witbart (Mont. 1985), 701 P.2d 339, 342, 42 St.Rep. 725, 728. It makes no difference whether such extrinsic fraud is actual or constructive. Cure v. Southwick (1960), 137 Mont. 1, 8-9, 349 P.2d 575, 579. We have defined extrinsic fraud as that fraud which effectively prevented the unsuccessful party from presenting his or her case fully. Pilati v. Pilati (1979), 181 Mont. 182, 189, 592 P.2d 1374, 1378; Minter v. Minter (1936), 103 Mont. 219, 230, 62 P.2d 233, 236. In Minter, this Court noted the following with respect to the distinctions between extrinsic and intrinsic fraud:

> The acts for which a judgment or decree may be set aside or annulled have reference only to fraud which is extrinsic or collateral to the matter tried by the court, and not to fraud in the matter on which judgment was rendered.
>
> . . .
>
> "[T]he acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relations to frauds, extrinsic or collateral, to the matter tried by the first court, and not to fraud in the matter on which the decree is rendered." [Citations omitted.]
>
> . . .

7

"Public policy demands that there should be an end to litigation, and therefore the courts look with a jealous eye upon suits which have for their object setting aside a judgment at law . . . Neither perjured testimony nor false or fraudulent allegations used in obtaining a judgment is a ground for equitable intervention in a suit to attack the judgment, unless the perjury or fraud was collateral to the questions examined and determined in the former proceeding."

Minter, 62 P.2d at 236.

Brown contends that the distinction between intrinsic and extrinsic fraud is difficult to ascertain and for that reason this Court should reverse the District Court and allow trial on the merits. While we recognize that allegations of fraud must be carefully scrutinized on a case-by-case basis, we do not believe that the distinctions between extrinsic and intrinsic fraud are so elusive as to warrant trial in every case.

In his complaint, Brown alleges that the Williston Group's fraudulent acts and statements "are too voluminous to set forth in their entirety." Brown then proceeds to list seven particular allegations which he now contends constitute extrinsic fraud. Summarized, these allegations are as follows:

1. The Williston Group represented that they were tenants in common with Brown in the partition action when in fact they were partners and joint venturers.

2. Certain members of the Williston Group testified in the partition action that they were only interested in the Throops Lake property for their personal recreational purposes and that no other obligations, rights, contracts,

8

relationships, or liabilities existed between the Williston Group and Brown.

3. The above testimony deceived the judge in the partition action into entering an order of partition in favor of the Williston Group.

4. The Williston Group concealed a contract agreement and withheld essential information from the judge in the partition action.

5. The Williston Group's attorney in the partition action had a conflict of interest in that his former partner had once represented Brown. The attorney, in his capacity as Lincoln County Attorney, also authorized the Lincoln County Sheriff's office to transport members of the Williston Group to the airport.

6. The Williston Group never had any intention of performing the contract with Brown to develop the Throops Lake property into a resort and in fact concealed their true motives and intentions which were to obtain the property for their personal recreational use.

7. The Williston Group's attorney represented to the Williston Group that he could exert influence on the bankruptcy judge and trustee, and the district court judge in the partition action to obtain "special favors."

We have reviewed the record in this matter with reference to the above allegations to determine whether there exists a genuine issue of material fact regarding the existence of extrinsic fraud as previously defined. As we have stated on numerous occasions, summary judgment should be granted where there is no genuine issue of material fact. Rule 56(c), M.R.Civ.P. Brown must come forward with evidence of a

genuine issue of material fact after the Williston Group met its initial burden of establishing the lack of same. Pretty on Top v. Hardin (1979), 182 Mont. 311, 315, 597 P.2d 58, 60.

Brown's first allegation regarding the nature of the parties' relationship in the property involves a defense that he should have raised in the partition action. This allegation would only entitle Brown to relief in this action if it were shown that he, through no negligence or fault of his own, was prevented from offering the defense by the extrinsic fraud of the Williston Group. 49 C.J.S. Judgments § 372 at 741-742. Brown has failed to show a genuine issue of material fact with regard to this allegation. In addition, our review of the record in this action and the record of Cause No. DV-82-94 leads us to believe that such a defense is not meritorious. Brown directs our attention to a memorandum filed by the Williston Group in the partition action which he alleges precluded him from presenting his defenses in that action. We have reviewed the memorandum and note that nothing contained therein precluded Brown from advancing available defenses had he chosen to do so.

The remainder of Brown's allegations, if true, are not properly classified as extrinsic fraud for which relief might be granted. These allegations of fraud pertain to the very matters the District Court considered in ordering a partition of the Throops Lake property. Brown's second, third and fourth allegations intimate that members of the Williston Group perjured themselves, falsified pleadings, and generally withheld the truth from the District Court. The record does not support these allegations of perjury and concealment nor do such allegations, if supported by the record, constitute extrinsic fraud in this case. Moser v. Fuller (1938), 107 Mont. 424, 430, 86 P.2d 1, 3 (citing U.S. v. Throckmorton (1878), 98 U.S. 61, 25 L.Ed.2d 93); Minter, at 236.

10

Brown contends in his sixth allegation that the Williston Group concealed their true intentions and that they never intended to work with Brown on his dream of building a resort area. However, it is evident from the record in Cause No. DV-82-94 that the Williston Group made no effort to conceal their intentions to use the Throops Lake property for personal recreational purposes and in fact, as early as February 1, 1982, informed Brown that they would like to buy his interest in the property for that purpose. The correspondence upon which Brown relies to substantiate his seventh allegation does not present any evidence of wrongdoing on the part of the trustees, judges, or the Williston Group's attorney in the partition action. Even if substantiated, the fifth and seventh allegations are not material to this litigation and do not present any genuine issue of material fact.

It is evident that Brown fully participated in Cause No. DV-82-94 and was not prevented from presenting his case fully by the Williston Group or its attorney. Accordingly, we hold that the District Court correctly granted the Williston Group's motion for summary judgment.

We note that the Williston Group plead the defense of laches in its answer to Brown's complaint and presented this defense as an independent grounds for a grant of summary judgment in its favor. The District Court chose not to address the laches issue and chose instead to address the factual and legal insufficiencies of Brown's case. On appeal, the Williston Group reasserts the laches defense and contends that Brown's allegations are barred by the doctrine of laches.

An independent action in equity to set aside a judgment allegedly obtained by fraud is subject to the defense of laches. Pilati, 592 P.2d at 1376. Brown waited nearly three

11

years before filing this suit to set aside the order partitioning the Throops Lake property. While we are inclined to agree with the Williston Group that Brown's action is barred by laches, we need not address this issue in light of our determination that the District Court was correct in concluding that there exists no genuine issue of material fact. The Williston Group also asserts two other grounds (statute of limitations and failure to establish a meritorious defense to the partition action) for affirming the District Court which need not be addressed by this Court for the above-stated reason.

Brown's second issue questions the District Court's application of Rule 11, M.R.Civ.P., sanctions to the circumstances of this case. Rule 11, in pertinent part, provides the following:

> Every pleading, motion, or other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated.
>
> . . .
>
> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> . . .
>
> If a pleading, motion, or other paper is signed in violation of this rule, the

court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Brown contends that the District Court abused its discretion in awarding Rule 11 sanctions to the Williston Group. Brown's primary basis for this contention is that the underlying action was well grounded in fact and law. Our holding with respect to Brown's first issue in this appeal suggests otherwise.

We recently set forth the standard of review with regard to Rule 11 sanctions in the case of Searight v. Cimino (Mont. 1988), 748 P.2d 948, 45 St.Rep. 46:

The current Rule 11, M.R.Civ.P. is virtually identical to the federal rule. Sanctions under this rule have rarely been imposed in Montana resulting in little case law. Federal authority indicates that the duty of the lawyer is to investigate both as to law and fact before filing a motion. The standard is that of reasonableness under the circumstances. [Citation omitted.] Because the rule mandates sanctions if violated, the duty of the appellate court is to review de novo the legal question of whether the specific conduct in question violated the rule. [Citations omitted.]

Searight, 748 P.2d at 951-952. We will not reverse an award of Rule 11 sanctions if such an award is justified under that rule or under the district court's inherent equity powers. State ex rel. Sorenson v. Roske (Mont. 1987), 745 P.2d 365, 368, 44 St.Rep. 1854, 1857.

We hold that the award of Rule 11 sanctions was proper in this case. As the District Court noted, Brown and his attorney have instituted a plethora of lawsuits aimed directly or indirectly at the Williston Group with regard to the Throops Lake property. In one such lawsuit instituted by Brown in Federal District Court, the Honorable Judge Russell E. Smith noted the following with regard to the amended complaint drafted by Flaherty on Brown's behalf:

> The amended complaint is the most irresponsible pleading that I have seen in my twenty years as a trial judge. [The amended complaint] names thirty-three defendants, some of them in dual capacities. After 24 pages of allegations, the first amended complaint contains twenty separate claims for relief. [Additions ours.]

After dismissing the majority of the claims, Judge Smith granted Brown leave to file an amended complaint on two claims and went on to state:

> I have heretofore indicated that, in my opinion, [Brown's] complaint was recklessly drawn. I have not imposed [Rule 11] sanctions. I will have them in mind as I examine any amended pleadings which are filed and if it would appear that antitrust claims are made against any defendant without reasonable cause, I will not hesitate to impose sanctions. Plaintiff's lawyers should consult Rule 11 of the Federal Rules of Civil Procedure. [Additions ours.]

In this case, Brown's complaint is replete with allegations of fraud, misrepresentation, deceit, bad faith, malice, concealment, perjury, conspiracy, and collusion. None of the allegations are grounded in fact nor do the allegations forward any legal theory upon which relief could be granted. Brown again argues that the distinctions between

14

intrinsic and extrinsic fraud are so difficult to ascertain that he was reasonable and justified in bringing this action. Again, we disagree. Reasonable inquiry on the part of Brown and his attorney would have revealed the factual and legal insufficiencies of this action.

The trustee in Brown's bankruptcy action found Brown's claims against the Williston Group to be so "burdensome and of no value to the [bankruptcy] estate" that he abandoned the claims to Brown. We agree with the District Court that "reasonable minds could only conclude that the instant action was interposed by plaintiff and his attorney in order to harass the [Williston Group] or to cause unnecessary delay or needless increase in the cost of litigation." Accordingly, we hold that Rule 11, M.R.Civ.P. sanctions in the form of reasonable attorneys' fees and costs of litigation were properly awarded to the Williston Group in this case.

In his final issue, Brown contends that the amount of attorneys' fees and costs awarded to the Williston Group as Rule 11 sanctions is unreasonable and excessive. The District Court conducted a hearing to determine the amount of the award on August 5, 1987. At that hearing, Robert M. Carlson, a Montana attorney, testified as to the reasonableness of the Williston Group's attorneys' fees and costs. Brown presented no evidence of unreasonableness other than his attorney's statements that the fees and costs were excessive. In making the award, the District Court considered the complexity of the case and the nature and amount of services rendered. The District Court also noted that the eleven defendants had "elected to join forces and retain only two attorneys, rather than each retaining separate counsel." The amount of the award in this case was discretionary with the District Court. Shors v. Branch (Mont. 1986), 720 P.2d 239, 246, 43 St.Rep. 919, 927. We

15

will not disturb the amount fixed absent a showing that the District Court "acted arbitrarily or has committed a clear abuse of discretion." In Re the Marriage of Hall (Mont. 1987), 740 P.2d 684, 686, 44 St.Rep. 1321, 1323. Brown and Flaherty have failed to carry their burden of showing that the District Court acted arbitrarily or abused its discretion. Accordingly, as to all matters presented by this appeal, the District Court's judgment is affirmed.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

16